UNITED STATES, Appellee

v.

Deric B. HOLLINGS, Private First Class
U.S. Marine Corps, Appellant

No. 07-0084

Crim. App. No. 200500497

United States Court of Appeals for the Armed Forces

Argued May 1, 2007

Decided June 19, 2007

BAKER, J., delivered the opinion of the Court, in which EFFRON,
C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel


For Appellant:  Lieutenant Brian L. Mizer, JAGC, USN (argued).


For Appellee:  Captain Roger E. Mattioli, USMC (argued);
Commander Paul C. LeBlanc, JAGC, USN (on brief).



Military Judges:  R. S. Chester, P. J. Ware, and L. Korzan



THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Hollings, No. 07-0084/MC

Judge BAKER delivered the opinion of the Court.

At a special court-martial consisting of officer members, Appellant was convicted of disrespect toward a noncommissioned officer, failure to obey a lawful order, and violation of a general order, in violation of Articles 91 and 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 891, 892 (2000). The adjudged and approved sentence was a bad-conduct discharge and no other punishments. The Court of Criminal Appeals affirmed in an unpublished opinion. United States v. Hollings, No. NMCCA 200500497 (N-M. Ct. Crim. App. Oct. 18, 2006). We granted review of the following issue:

> WHETHER THE MILITARY JUDGE FAILED TO ADHERE TO THE
> LIBERAL GRANT MANDATE WHEN HE DENIED A DEFENSE
> CHALLENGE FOR CAUSE AGAINST CHIEF WARRANT OFFICER W
> WHO SERVED AS ACTING LEGAL OFFICER TO THE CONVENING
> AUTHORITY IN APPELLANT'S CASE.

Chief Warrant Officer (CWO-5) Westfall was the installation personnel officer at Marine Corps Air Station, Miramar, California. During voir dire, he stated that at the time Appellant's charges were preferred, he was "dual-hatted" as the personnel officer for both the station as well as Headquarters and Headquarters Squadron (H&HS). As a result, he was on the distribution list for the squadron weekly legal report.[1] He stated that in the two weeks prior to the court-martial he

---

[1] This report appears to have been a weekly listing of individuals denoting where their cases were at the various stages of legal processing.

2

recalled Appellant's name on the report listing the particular

articles of the UCMJ he was alleged to have violated and the

fact that Appellant was pending court-martial at the time.  He

characterized his interaction with the H&HS legal officer as

follows:

> If she [the H&HS legal officer] needed something from
> me in support [of] her legal actions, or if I had to
> certify the unit diaries, recording the completed
> legal action, I would do that.  And if I needed
> information from her to adjust the morning report or
> to keep track of some of these other administrative
> actions, then I would come back to see her.

Regarding the certification of unit diaries,[2] he indicated that

he performed this task on days that the legal officer was not

available.  He also stated that although certification of unit

diaries was a job that a legal officer could do and usually did,

he stated that it was a job that a personnel officer was

required to do.  The relevant voir dire exchange follows:

> DC:  So when she [the legal officer] was unavailable
> in the February timeframe, you would act as the legal
> officer for H&HS?
>
> MBR:  No, sir.  I didn't act as the legal officer, but
> I did certify the unit diary transactions which
> recorded NJPs or court-martials [sic].
>
> DC:  Is that a job that a legal officer usually does?

---

[2] The unit diary is the administrative medium used to report
events and occurrences of the unit, personnel actions and other
data relative to members of the unit.  Marine Corps Total Force
System Personnel Reporting Instructions Manual (MCTFSPRIM),
Marine Corps Order PL080.40C, para. 20100 (June 7, 2001).

> MBR:  It is a job that a legal officer can and usually does.  It also [is] a job that [the] personnel officer is required to do, certify unit diaries.
>
> DC:  So you performed some duties of a legal officer in February?
>
> MBR:  I certified unit diaries.  I didn't necessarily request legal services.  I didn't type Group NJPs, other UPBs [unit punishment books], I didn't go in for court-martials [sic] or office hours,[3] I didn't give the [commanding officer] any opinions or legal recommendations.

Defense counsel challenged CWO-5 Westfall for cause, claiming that he qualified as a "legal officer" under Rule for Courts-Martial (R.C.M.) 912(f)(1)(G).  Defense counsel did not challenge CWO-5 Westfall on the grounds of actual or implied bias, a point verified by the military judge as part of his ruling.  Specifically, the military judge stated:

> I did not hear him say, Captain Smith, that he was involved in this case specifically, that he actually reviewed or processed the charges that are pending before this court-martial.  And I don't believe that the limited involvement, if you will, in reviewing the standard weekly legal report rises to the level of a challenge for cause.  If the sole basis for the challenge is that he is or was acting as a legal officer in this case, that basis doesn't exist and the challenge for cause is denied.

The United States Navy-Marine Corps Court of Criminal Appeals agreed, concluding that "[t]he sole basis alleged at trial for the challenge was that CWO Westfall was the unit legal officer and was therefore prohibited from sitting as a member per R.C.M.

---

[3] Hearings pursuant to Article 15, UCMJ, 10 U.S.C. § 815 (2000).

912(f)(1)(G).  The Appellant does not allege, nor do we find, evidence of bias, either actual or implied."  Hollings, No. NMCCA 200500497, slip op. at 3.

On appeal to this Court, Appellant renews his argument that CWO-5 Westfall acted as legal officer in this case.  He further argues that Westfall should have been removed for cause on the ground of implied bias and that in denying Appellant's challenge for cause, the military judge failed to adhere to the liberal grant mandate.  We address each argument in turn.

R.C.M. 912(f)(1)(G) provides that "A member shall be excused for cause whenever it appears that the member: . . . Has acted in the same case as convening authority or as the legal officer or staff judge advocate to the convening authority."  Article 1 of the UCMJ[4] defines "legal officer" as "any commissioned officer of the . . . Marine Corps . . . designated to perform legal duties for a command."  Put directly, CWO-5 Westfall did not meet this definition and he did not act in this case as the legal officer.  He did what personnel officers do, he certified the unit diary.  On this record, any argument to the contrary is at best a reach.

Appellant next argues in the alternative that CWO-5 Westfall should have been excused on the ground of implied bias.

---

[4] 10 U.S.C. § 801 (2000).

5

Whether Westfall technically served as a "legal officer" in this case or not, he was a "career legal officer," he was familiar with Appellant's case as a result of his duties, and at least some of those duties were legal in nature. According to Appellant, as a result, CWO-5 Westfall's participation would undermine the public's perception in the impartiality and fairness of Appellant's court martial.

We are left to wonder whether we are reviewing a different record of trial. According to CWO-5 Westfall's voir dire testimony, he served as "Personnel Officer for the station." He also had occasion to cover the personnel officer's responsibilities for H&HS. This was Appellant's squadron. In this capacity, CWO-5 Westfall "was on the distribution for the H&HS legal report, the weekly legal report, wherein the defendant's name and the charges against him are represented on that report. No other detailed information is present on that report." Westfall had served in the Marine Corps as a legal officer and went to the Naval Justice School for the legal officer's course in 1990 or 1991. But he was not a "career legal officer." He served as a legal officer for "two years plus" following the legal officer's course. He then "assisted the legal officer at the infantry battalion on my next tour, helped out a little at the regiment, and have pretty much been relieved from the legal officer responsibility since then."

CWO-5 Westfall was not a legal officer at the time of Appellant's court-martial.  His knowledge was derived from the H&HS weekly legal report, which he reviewed in his capacity as acting personnel officer for the squadron.  There is no indication that CWO-5 Westfall knew Appellant, and the only information in the weekly legal report about the case pertained to his name and the charges against him, facts of record immediately evident to anyone attending Appellant's court-martial.  When asked by trial counsel whether he would "have any reluctance whatsoever to [disagree with the convening authority]" on the findings or sentence in this case, CWO-5 Westfall responded, "No, sir.  I would be able to do what I thought was right."  He then added a finishing touch of salt: "And besides, I can't get promoted again, so it really doesn't matter."  Defense counsel did not challenge CWO-5 Westfall on the ground of implied bias.  And, on this record, we concur with the lower court's finding that there was no evidence of bias, actual or implied.

Nonetheless, Appellant argues that the military judge erred because he did not indicate that he addressed implied bias or considered the liberal grant mandate in ruling on Appellant's challenge.  We have enjoined military judges to follow the liberal grant mandate in evaluating challenges for cause. United States v. Clay, 64 M.J. 274, 277 (C.A.A.F. 2007); United

States v. Leonard, 63 M.J. 398, 402 (C.A.A.F. 2006); United States v. Moreno, 63 M.J. 129, 134 (C.A.A.F. 2006). A military judge who addresses the concept on the record is entitled to greater deference than one who does not. Clay, 64 M.J. at 277. However, this does not suggest that the military judge is entitled to no deference. Moreover, at trial the military judge did not address actual or implied bias because defense counsel argued that the sole basis for challenging CWO-5 Westfall was his per se disqualification as a legal officer under R.C.M. 912(f)(1)(G).

With respect to Appellant's implied bias argument, the liberal grant mandate recognizes the military judge's responsibility to prevent both the reality and the appearance of bias involving potential court members. Id. R.C.M. 912(f)(1)(N) requires the removal of a member "in the interest of having the court-martial free from substantial doubt as to legality, fairness and impartiality." For the reasons stated above, no such doubts were raised by CWO-5 Westfall's responses during voir dire, and the military judge acted within his discretion in denying the challenge for cause.

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.