UNITED STATES, Appellee

v.

Laprie D. TOWNSEND, Master-at-Arms Second Class
U.S. Navy, Appellant

No. 07-0229

Crim. App. No. 200501197

United States Court of Appeals for the Armed Forces

Argued December 5, 2007

Decided February 5, 2008

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and STUCKY and RYAN, JJ., joined.  BAKER, J.,
filed a separate dubitante opinion.

Counsel

For Appellant:  Lieutenant Anthony Yim, JAGC, USNR (argued).

For Appellee:  Major Brian K. Keller, USMC (argued); Commander
Paul C. LeBlanc, JAGC, USN, and Captain Roger E. Mattioli, USMC
(on brief).

Military Judge:  John W. Rolph

**This opinion is subject to revision before final publication.**

United States v. Townsend, No. 07-0229/NA

Judge ERDMANN delivered the opinion of the court.

Master-at-Arms Second Class Laprie D. Townsend was convicted at a general court-martial of attempted unpremeditated murder and reckless endangerment as a result of an incident in which he discharged a firearm at a vehicle containing several occupants. He was sentenced to a dishonorable discharge and ten years of confinement. The convening authority approved the sentence, but reduced the period of confinement to six years. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and the sentence as reduced by the convening authority. United States v. Townsend, No. NMCCA 200501197, 2007 CCA LEXIS 23, at *23-*29 (N-M. Ct. Crim. App. Jan. 12, 2007). We granted Townsend's petition to determine whether the military judge abused his discretion when he denied Townsend's challenge for cause against one of the members of the court-martial panel.

Townsend claims that his challenge to LT B should have been granted on the basis of implied bias, as a reasonable observer would perceive that LT B's presence as a member rendered the trial unfair. Based on the facts of this record, we conclude that the military judge did not abuse his discretion. None of the reasons offered in support of the challenge, either alone or cumulatively, result in the public perceiving that Townsend

received less than a court of fair, impartial members.  We

therefore affirm the decision of the Court of Criminal Appeals.

## Background

Townsend requested trial by officer and enlisted members.

LT B was among the members assembled for the court-martial.

Following group voir dire, each court member was individually

voir dired.  Questioning of LT B by both the trial counsel and

the defense counsel focused, in part, on LT B's legal training

and professional aspirations, his relationship with his police

officer father, his view of law enforcement personnel, and his

opinion of defense counsel.

LT B indicated that he had taken the "Non-Lawyer Legal

Officer Course" at the Naval Justice School where he received

"just basics" on legal defenses which included the concept of

self-defense.  At the time of trial he was enrolled in a

criminal law class as a night law student.  Asked what type of

lawyer he wanted to be, LT B responded that he wanted to become

a criminal prosecutor.  LT B indicated that he desired to be a

prosecutor as "public service", "putting the bad guys in jail",

and "keeping the streets safe."

Nonetheless, LT B stated that he was not biased toward the

Government's case and that he could "absolutely" set aside

anything he may have learned elsewhere and follow the

instructions as given by the military judge.  He assured the

military judge that his desire to become a criminal prosecutor did not change his belief that Townsend was innocent until proven guilty beyond a reasonable doubt and he would be able to follow the military judge's instructions if they differed from information he had learned at school. LT B affirmed that he would listen to both the prosecution and defense and hold the Government to its burden of proof. He said he had not prejudged Townsend.

Following up on questions about why LT B wanted to be a prosecutor, defense counsel asked LT B, "[W]hat are your opinions of defense counsels?" LT B responded that he had a "mixed view." Specifically, he had high regard for military defense counsel who were military officers and individuals of high ethical and moral standards. However, he had "lesser of a respect for some of the ones you see on TV, out in the civilian world." This reference to television lawyers arose from the fact that LT B was a regular viewer of the television show Law and Order.

LT B said that his father, with whom he was close, was a member of the law enforcement community. As a result, LT B had a "healthy respect for law enforcement, and people in authority." Asked if he would hold the testimony of law enforcement personnel in higher esteem than other witnesses, LT B responded that he would try to be objective about everything.

If he had a "gut decision" to make, he stated that: "a good cop, [if] he's had a good record, you know, [was] well respected, that -- that would definitely give some credibility to their testimony." Asked if he could follow the military judge's instructions with respect to weighing the credibility of law enforcement as he would any other witness, LT B responded, "Yes." LT B stated that a witness's status as a law enforcement officer would not automatically cause him to believe or disbelieve that individual.

Townsend's defense counsel challenged LT B and one other panel member for cause. The military judge summarily granted the challenge to the other member and asked for argument on the challenge against LT B. Citing Rule for Courts-Martial (R.C.M.) 912(f), Townsend's counsel argued that LT B's beliefs had been "hardened" in regard to criminal cases by his legal training and desire to be a prosecutor, and by his relationship with his father. The defense counsel noted that LT B's respect for law enforcement officers would cause him to defer to the officers' credibility and when combined with LT B's express desire to "put the bad guys away," would cast doubt on his impartiality. Finally, the detailed defense counsel noted that LT B had expressed a general disdain for defense counsel in the civilian world and that defense counsel in general "troubled him in some regard."

The trial counsel responded that LT B had indicated without hesitation that he could be impartial and would apply the law as instructed upon by the military judge. With respect to assessing the credibility of law enforcement officers, the trial counsel noted LT B's statement that he would judge a law enforcement officer's credibility by the same criteria he would apply to any other witness. Finally the trial counsel emphasized that LT B's answers were genuine and sincere and that LT B indicated he would follow the military judge's instructions regardless of his desire to be a criminal prosecutor.

The military judge denied the challenge for cause:

> I do want to state that I found him to be extremely genuine and sincere in his responses. The fact that he is in Law School and desires to be a prosecutor is -- is not, in itself, a basis for challenge. He made it very clear that he would listen to all the evidence, that he didn't have a particular slant one way or the other in regard to the prosecution or the defense in this case, that he understood the presumption of innocence, and the burden of proof beyond a reasonable doubt, and I'm confident, in what I observed of this young officer's demeanor, that he is legitimately sincere and serious about his role at this court-martial, and therefore I will deny that challenge for cause.

Defense counsel then used his peremptory challenge to remove a different panel member thereby preserving his appeal of the denial of the challenge for cause to LT B. See R.C.M. 912(f)(4).

## Discussion

"An accused is entitled to a trial by members who are qualified, properly selected, and impartial." United States v. Moreno, 63 M.J. 129, 132 (C.A.A.F. 2006) (citing Article 25, UCMJ, 10 U.S.C. § 825 (2000)). R.C.M. 912 encompasses challenges based upon both actual bias and implied bias. United States v. Clay, 64 M.J. 274, 276 (C.A.A.F. 2007); United States v. Ai, 49 M.J. 1, 4-5 (C.A.A.F. 1998). Townsend does not allege actual bias. While he argued that voir dire revealed potential grounds for actual bias, he conceded that LT B had been successfully rehabilitated.

R.C.M. 912(f)(1)(N) provides a challenge where it appears an individual "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." Implied bias exists when, despite a disclaimer, most people in the same position as the court member would be prejudiced. United States v. Napolitano, 53 M.J. 162, 167 (C.A.A.F. 2000); United States v. Warden, 51 M.J. 78, 81 (C.A.A.F. 1999); United States v. Daulton, 45 M.J. 212, 217 (C.A.A.F. 1996). To test whether there is substantial doubt about the fairness of the trial, we evaluate implied bias objectively, "through the eyes of the public," reviewing "the perception or appearance of fairness of the military justice system." United States v. Schlamer, 52

7

M.J. 80, 92-93 (C.A.A.F. 1999); United States v. Dale, 42 M.J. 384, 386 (C.A.A.F. 1995). Our inquiry is to determine whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high. United States v. Wiesen, 56 M.J. 172, 176 (C.A.A.F. 2001).

Although we review issues of implied bias for abuse of discretion, the objective nature of the inquiry dictates that we accord "a somewhat less deferential standard" to implied bias determinations of a military judge. United States v. Armstrong, 54 M.J. 51, 54 (C.A.A.F. 2000); United States v. Napoleon, 46 M.J. 279, 283 (C.A.A.F. 1997). In addition, we have held that military judges should apply a liberal grant mandate in ruling on challenges asserted by an accused. United States v. White, 36 M.J. 284, 287 (C.M.A. 1993); see also Clay, 64 M.J. at 277; United States v. James, 61 M.J. 132, 139 (C.A.A.F. 2005); United States v. Downing, 56 M.J. 419, 422 (C.A.A.F. 2002). Where a military judge does not indicate on the record that he has considered the liberal grant mandate in ruling on a challenge for implied bias, we will accord that decision less deference during our review of the ruling. See Clay, 64 M.J. at 277; United States v. Hollings, 65 M.J. 116, 119 (C.A.A.F. 2007); United States v. Terry, 64 M.J. 295, 296 (C.A.A.F. 2007). Consequently, "we will overturn a military judge's ruling on an

accused's challenge . . . where he clearly abuses his discretion in applying the liberal grant mandate." Moreno, 63 M.J. at 134.

Before this court Townsend renews his claims that his trial would be perceived as unfair because LT B:  had a close relationship with his law enforcement father; was a law student at the time of trial with a career goal of being a criminal prosecutor; was disposed to give a law enforcement officer's testimony more credibility than he would give to other witnesses; and did not hold defense attorneys in high regard. Townsend argues that the military judge should not be accorded much deference because he did not indicate that he considered either implied bias or the liberal grant mandate in his ruling.

The Government responds that the record does not support a claim that any of the reasons put forward by Townsend raise implied bias and argues that Townsend has failed to show that the public would harbor any misgivings about the fairness of his trial.  Additionally, the Government urges that there is nothing to overcome LT B's many assurances that he would follow the instructions of the military judge and serve as a fair, impartial court member.

Initially, we agree with Townsend about the deference we should accord to the military judge's ruling.  While the military judge assessed the credibility and demeanor of LT B on the record, the ruling denying the challenge of LT B did not

9

reflect whether he considered either implied bias or the liberal grant rule.[1]  Therefore, we accord less deference to his ruling than we would to one which reflected consideration of implied bias in the context of the liberal grant mandate.  See Clay, 64 M.J. at 277 ("A military judge who addresses implied bias by applying the liberal grant mandate on the record will receive more deference on review than one that does not.").

Law enforcement personnel are not per se disqualified from service as court members.  See Dale, 42 M.J. at 386.  If status as a law enforcement officer is not a disqualification, it follows that a mere familial relationship with a member of the law enforcement community creates no greater basis upon which to disqualify a member than law enforcement status itself.  We discern nothing in the record to suggest that LT B was hardened in his views on criminal law by virtue of his respect for his father or his father's background in law enforcement.

---

[1] The military judge did at one point indicate that he was granting a Government challenge, in part, by applying the liberal grant mandate.  We note that this case was tried prior to our decision in United States v. James, 61 M.J. 132, 139 (C.A.A.F. 2005), in which we found "no basis for application of the 'liberal grant' policy when a military judge is ruling on the Government's challenges for cause."  Although the military judge here was not aware of our holding in James, we do not consider his single reference to the liberal grant mandate in the context of a Government challenge to be a reflection that he gave similar consideration to the mandate when ruling on Townsend's challenge against LT B.

United States v. Townsend, No. 07-0229/NA

While the voir dire reflected that LT B had respect for law enforcement, that respect did not translate into any objectively discernable bias.  Although LT B indicated that he would afford a certain amount of credibility to a police officer with a good record, his view was not so inflexible that it would not yield to the military judge's instructions on credibility.  In fact, evidence of a police officer's record, good or bad, would be a factor that any court member could use along with his or her personal observation of the witness and all other evidence of record in determining credibility.  Thus, LT B's statement is not an indication of a bias or prejudice that would not yield to proper instruction or create an appearance of unfairness in this trial.

A similar conclusion can be derived as to LT B's enrollment in law school and his desire to become a prosecutor.  Lawyers are not per se disqualified as court-martial members unless they have served in one of the capacities explicitly set forth as a disqualification in the Uniform Code of Military Justice (UCMJ).  See Article 25(d)(2), UCMJ; R.C.M. 912(f); see also United States v. Hedges, 11 C.M.A. 642, 643, 29 C.M.R. 458, 459 (1960).  It follows that one who only aspires to become a lawyer is not disqualified and presents no greater threat to the fairness of a proceeding than does a court member who is a fully trained and licensed attorney.

While LT B stated that following law school he would like to become a prosecutor, the record shows that he was aware of the proper role of a court member and would adhere to that role. He specifically said that he would cast aside any legal notions he developed from his legal education and would strictly follow the instructions of the military judge. Even setting aside these disclaimers, we see no reasonable basis upon which to conclude that LT B's status as a law student or his career aspirations presented a substantial basis to question the fairness of this proceeding.

Lastly, we note that the claim that LT B did not like defense lawyers or did not hold defense lawyers in high regard is not an accurate reflection of LT B's responses during individual voir dire. The record reflects that LT B expressed high regard for military defense counsel as officers and persons of high integrity. It further reflects that Townsend was represented by a military defense counsel in this case rather than a civilian defense counsel. Even his remarks about civilian defense counsel were cast in the context of how television portrayed civilian defense counsel on the Law and Order television program. These remarks cannot be reasonably interpreted to imply that LT B disliked licensed, professional defense counsel, military or civilian.

12

The record reflects that the factors asserted as a basis for implied bias are not disqualifying or egregious and would not, individually or cumulatively, result in the public perception that Townsend received something less than a court-martial of fair and impartial members. In fact, a dispassionate, objective review of this record reflects quite the opposite. LT B understood and appreciated the role of a court member, including his obligation to apply the law as instructed upon by the military judge and his obligation to remain unbiased. We believe a reasonable observer, considering the record as a whole, would have harbored no questions about LT B's neutrality, impartiality, and fairness.

However, appellate defense counsel goes on to argue that we should find implied bias regardless because there is a point at which numerous efforts to rehabilitate a member will themselves create a perception of unfairness in the mind of a reasonable observer. In other words, appellate defense counsel posits the question, "How much is too much?" The question has merit within the context of challenges for implied bias.

It might be possible that a particular member of a court-martial would require rehabilitation to such an extent that the rehabilitation itself would give rise to reasonable questions about the fairness of the proceeding if that member were to remain on the panel. The need to engage in extensive

13

rehabilitation of a potential court member may present the very type of "close" situation that supports application of the liberal grant mandate. Clay, 64 M.J. 277 ("[I]n close cases military judges are enjoined to liberally grant challenges for cause."). This, however, is not that situation. This was not a case in which an extensive rehabilitation of LT B was required or pursued. During voir dire, each side questioned LT B only once. Trial counsel questioned LT B followed by questioning from defense counsel. There was no extensive back and forth effort to undermine and then rehabilitate LT B's qualifications to sit as a member of the court. This straightforward individual voir dire was dramatically different than a repeated effort to rehabilitate LT B which might have created substantial doubts about the fairness of this proceeding.

None of the factors urged by Townsend serve to disqualify LT B from serving as a court member and they would not cast doubt in the eyes of the public upon the fairness of this court-martial. The record reflects that LT B understood his role as a court member and that he would follow the instructions of the military judge. Examining the cumulative impact of LT B's disclaimers in light of the liberal grant mandate, we conclude that this is not a close case where failure to apply the liberal grant mandate is fatal. The military judge did not abuse his discretion in denying the challenge against LT B.

Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

BAKER, Judge (dubitante):

The liberal grant mandate exists for cases like this. As the majority opinion points out, there are no inherently disqualifying factors presented in the voir dire testimony of LT B, but there certainly are many candidates.

First, LT B expressed negative views of civilian defense attorneys, but not military counsel. Second, LT B admitted that he would give more credibility to a law enforcement officer, that he had a "gut" feeling to side with a law enforcement officer in a close case. Third, it was LT B's aspiration to be a prosecutor, in order to "put [] the bad guys in jail."

Additionally, two other factors, which would not normally constitute implied bias, must be considered in the context of these preceding statements by LT B. First, in pursuit of his goal of being a prosecutor, LT B was a part-time law student studying criminal law, including theories of self-defense (some of which would form the foundation of Appellant's argument). Finally, LT B stated during voir dire that his father -- with whom he had a close, respectful relationship -- was a law enforcement officer.

Against these potentially disqualifying facts must be weighed those factors that argue against excusal. First, the Appellant himself concedes that LT B's participation as a member resulted in no actual bias, and there is no evidence that LT B's

bias -- if such existed -- affected the case.  Second, the military judge gave an instruction that members were not to consider any outside sources in reaching their findings.  Third, there was a lengthy voir dire of LT B, during which he stated that he harbored no preconceptions concerning the case and made all the correct rehabilitative statements.  Viewed in the abstract from the record, these assurances by LT B seem oblique and dubious;[1] nonetheless, the military judge found them to be sincere and genuine.

---

[1] Consider the following exchange during voir dire between LT B and the Assistant Trial Counsel:

> ATC:  . . . In this case the government is going to present testimony from several members of the Naval Criminal Investigative Service, and obviously they're members of the law enforcement community.  Will you hold their testimony in higher regard, meaning more likely to believe what they say simply because they're NCIS Agents, or will you weigh their testimony, just like you'll weigh the testimony of any other witness who may testify?

> LT B:  Well, to be honest with you, that's a -- that's a -- I think that's not quite a black and white answer, and what I mean is, of course we all try and be objective when we sit here, and we weigh everything we hear as -- as an objective person.

> But I think if -- if -- if you had a gut decision to make, one way or the other, I think that the fact that they were -- had a law enforcement person with a good record that might give you a little bit more cut to the other way, if it was too close, and you weren't quite sure.  But -- well, he's -- he's a -- he's a good cop, he's had a good record, you know, he's well respected, that -- that would definitely give some credibility to their testimony, I would think.

At some point, a member of the public, as well as an accused, might begin to wonder why it was necessary for the government to rehabilitate this member of the panel not once, but several times on ten different subjects,[2] however sincere the responses.  An outside observer might well wonder whether this member really felt differently about military and civilian defense counsel, after hearing LT B's statements that his gut told him to side with law enforcement and he wanted to be a prosecutor so he could "put [] the bad guys in jail."  As with the trees at Dolly Sods, the wind only blows in one direction.  Put more directly, it is obvious to any observer, judicial or public, that this member was in outlook "pro-prosecution", which is not necessarily the same as saying that LT B was biased.

Therefore, in my view this case presented an easy trial level call to dismiss the member and avoid any issues of implied

---

ATC:  Okay.  If the military judge were to instruct you that you have to use the same factors when weighing the credibility of that NCIS Agent as you do any other witness, could you follow those instructions, and use those same factors when deciding on the credibility of an NCIS Agent?

LT B: Yes.

[2] I.e., Extrajudicial knowledge of the law, law school attendance, desire to be a prosecutor, knowledge of forensic science, participation in a previous judicial proceeding, relationship to a law enforcement officer causing bias in favor of prosecution, gun ownership, views of criminal defense attorneys, willingness to give sentence accused to life imprisonment, and perception of witnesses testifying in exchange for a lower sentence.

bias on appeal.  Why would a military judge take a chance, where, in fact, the accused has objected to the member sitting on his court and preserved the issue?  Why take the chance that an appellate court will disagree and reset the clock after years of appellate litigation?  Three considerations inform this view.

First, in a system of panel selection where the convening authority selects the pool of members and the parties only have one peremptory challenge, application of the liberal grant concept helps to address questions that may linger in public perception regarding the appearance of bias in the selection of members.

Second, this court-martial took place at Norfolk Naval Station.  There is no indication that there were national security reasons why the potential pool of members was small, perhaps necessitating a "tie goes to the government" approach on implied bias.

Third, appellate review of member challenges is an ungainly, if not impractical, tool to uphold and reinforce the importance of Rule for Courts-Martial (R.C.M.) 912 in military justice practice.  Among other things, appellate courts do not have the benefit of hearing the tone of a response or to observe the demeanor of voir dire responses.  Further, where matters of appearance and nuance rather than clear error are involved, courts might well be hesitant to reset the clock.  And yet, from

within the system, it may be particularly hard to discern the extent to which member selection is viewed in public circles as a weak link in the otherwise strong chain of military justice. Hence, trial judges are repeatedly enjoined at the appellate level to consider questions of implied bias and to do so on the record.

For these reasons, I think it was an easy call at the trial level to dismiss LT B from the member pool, but a harder call to do so on appeal as a matter of law. The government should not have had to work so hard to rehabilitate a member whose outlook was fundamentally with the prosecution. At the same time, this was a close case as a matter of law (as opposed to practice), and I was not present to evaluate the tone, content, and sincerity of the member's responses, all of which inform an implied as well as actual bias challenge. Indeed, the nature of LT B's responses conveys conscientious honesty. It is the responsibility of the military judge -- and not appellate courts -- to make determinations based on such ineffable factors. Nonetheless, LT B's consistently equivocal responses to the questions cited above leave me with doubts. As a result, I reluctantly concur.