ERDMANN, Judge,
with whom RYAN, Judge, joins (dissenting):
Rule for Courts-Martial (R.C.M.) 912 encompasses challenges based upon both actual bias and implied bias. United States v. Clay, 64 M.J. 274, 276 (C.A.A.F.2007); United States v. Ai, 49 M.J. 1, 4-5 (C.A.A.F.1998). R.C.M. 912(f)(l)(N) provides a challenge for implied bias where it appears an individual “[sjhould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality.” The focus of a challenge for implied bias is upon “the perception or appearance of fairness of the military justice system” as viewed objectively “through the eyes of the public.” United States v. Schlamer, 52 M.J. 80, 93 (C.A.A.F.1999) (citations and quotation marks omitted); United States v. Dale, 42 M.J. 384, 386 (C.A.A.F.1995). As I noted in United States v. Townsend, 65 M.J. 460, 463 (C.A.A.F. 2008): “Our inquiry is to determine whether the risk that the public will perceive that the accused received something less than a court of fair, impartial members is too high.” I conclude that a reasonable member of the public would have serious doubts about the fairness of Elfayoumi’s trial with Major (MAJ) G sitting on the panel.
Religious, moral, and personal beliefs are relevant considerations in determining whether an individual should serve as a juror or court member. “The right to examine jurors on the voir dire as to the existence of *358 a disqualifying state of mind, has been upheld ... in relation to religious and other prejudices of a serious character.” Aldridge v. United States, 283 U.S. 308, 313, 51 S.Ct. 470, 75 L.Ed. 1054 (1931). If moral or religious principles are so strong that they will not yield and permit a potential member to adjudicate the case without violating those principles, there is cause to excuse that member. See United States v. Decoud, 456 F.3d 996, 1017 (9th Cir.2006); United States v. Geffrard, 87 F.3d 448, 451-52 (11th Cir.1996); United States v. Hoffman, 806 F.2d 703, 705 (7th Cir.1986). It follows that if moral or religious conviction can serve to disqualify a member, those same traits can also create a perception of unfairness in the eyes of the public when those traits may prejudice a member’s adjudication of the case or that member’s view of the accused.
The charges in this case and the evidence ultimately presented leave no question that homosexual conduct and pornography were at the core of the case. MAJ G left no doubt about his views and aversions to both. He stated without qualification that: he had “religious or other strong objections to homosexuality”; he had a “religious or moral aversion to pornography”; he felt that “a person who possesses pornographic material is immoral”; he had “Christian” feelings that homosexuality was morally wrong; he held strong opinions against homosexuality; he would have a “hard time” not considering a discharge on sentencing; and he believed pornography was “wrong.” In light of these unwavering responses, a reasonable observer could conclude that MAJ G’s “strong,” “moral” and “Christian” beliefs would influence his adjudication of the offenses and his perception of Elfayoumi who: inferentially was homosexual; rented and viewed pornographic materials; touched another male while viewing pornography; indecently touched three other males at distinct times; and committed forcible sodomy upon a male who refused his sexual advances.
The military judge did engage MAJ G in questioning about his beliefs and convictions and he did obtain an assurance from MAJ G that he could follow the law as given by the military judge. However, review for implied bias is undertaken “despite a disclaimer.” Townsend, 65 M.J. at 463. In addition, the military judge’s ruling does not reflect that he considered the liberal grant mandate. Where a military judge does not indicate on the record that he has considered the liberal grant mandate in ruling on a challenge, we will accord that decision less deference during our review of the ruling. See Clay, 64 M.J. at 277; United States v. Hollings, 65 M.J. 116, 119 (C.A.A.F.2007); United States v. Terry, 64 M.J. 295, 296 (C.A.A.F.2007).
Under the circumstances of this case, I conclude there was a substantial risk that the public would feel that this trial was not conducted with a fair and impartial panel. This is the type of case in which the military judge should have applied the liberal grant mandate and utilized the “added flexibility, and duty, to err on the side of caution where there is substantial doubt as to the fairness of having [MAJ G] sit.” United States v. Elfayoumi, 66 M.J. at 357 (C.A.A.F.2008). I therefore dissent.