# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, A.Y. MARKS, B.T. PALMER**
Appellate Military Judges

## UNITED STATES OF AMERICA

v.

## DALTON C. NICKENS
## LANCE CORPORAL (E-3), U.S. MARINE CORPS

### NMCCA 201500142
### GENERAL COURT-MARTIAL

**Sentence Adjudged:** 11 December 2014.
**Military Judge:** CAPT J.K. Waits, JAGC, USN.
**Convening Authority:** Commanding General, Command Element, Marine Forces Central Command Forward, Naval Support Activity, Bahrain.
**Staff Judge Advocate's Recommendation:** Maj S.M. Quinn, USMC.
**For Appellant:** William E. Cassara, Esq.; LT Ryan W. Aikin, JAGC, USN.
**For Appellee:** Maj Matthew M. Harris, USMC; LT James M. Belforti, JAGC, USN.

**31 March 2016**

---------------------------------------------------
### OPINION OF THE COURT
---------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PALMER, Judge:

A panel of members with enlisted representation, sitting as a general court-martial, found the appellant guilty, contrary to his pleas, of attempted rape, rape (via digital penetration), and assault consummated by a battery in violation of Articles 80, 120, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 920, and 928.[1]  The members sentenced the appellant to ten years' confinement, reduction to pay grade E-1, total forfeitures, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

---
[1] The appellant was found not guilty of committing burglary in violation of Article 129, UCMJ, 10 U.S.C. § 929.

The appellant raises four assignments of error (AOE):

(1) That the military judge abused his discretion when he prevented the defense from introducing expert testimony related to an alcohol blackout;

(2) That the military judge erred when he denied a defense challenge for cause of a panel member;[2]

(3) That the military judge abused his discretion by denying the defense the ability to impeach the victim with inconsistent statements and failing to give the defense requested instruction concerning the alleged inconsistent statements; and,

(4) That the specification under Charge I and the specification under Charge III are an unreasonable multiplication of charges with the specification under Charge II.

After careful consideration of the record of trial, the appellant's AOEs, and the pleadings of the parties, we conclude that the findings and the sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant occurred. Arts. 59(a) and 66(c), UCMJ.

## Background

In January 2014, the appellant completed a four-month deployment to Yemen with an infantry company. While redeploying, the company transited Bahrain where they remained for several days. While in Bahrain, the company was billeted in various off-base civilian apartment complexes. At an on-base command-organized function, the appellant consumed up to four pitchers of beer and became intoxicated. Thereafter he and his roommates traveled back to their apartment. Shortly after arriving, the appellant, without informing his fellow Marines, left the eighth floor apartment and headed downstairs.

The victim in all the charged offenses, SE, a Malawi national, lived on the second floor of the same apartment building with her husband, VE, and their two-year-old son. At approximately 2330, VE departed to walk the family dogs. Within minutes, SE, who was lying on her bed in the bedroom, heard the front door open and, assuming it was her husband, called out to him. It was instead the appellant who, without speaking entered her bedroom. SE, who did not know the appellant, told him he was in the wrong apartment and ordered him to leave. The appellant began unbuckling his belt. SE screamed and tried to run from the room. The appellant then grabbed her, held her, and forced his hand down the front of her pajama shorts and inserted his finger into her vagina. She broke free and, as she ran from the room, she saw her son standing in the hallway. She testified that hoping to lead the appellant away from her son, she tried to flee the apartment. The appellant caught her at the apartment door and the struggle

---

[2] The appellant raises this AOE pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). *See,* Appellant's Reply Brief of 4 Feb 2016 at 5.

renewed as she pushed the appellant away with her hands while attempting to force the door open with her leg. The appellant injured SE's leg as he tried to push the door shut. She eventually escaped the apartment and pounded on her adjacent neighbors' doors seeking help. When they did not answer, she turned toward the appellant, told him he was in Bahrain and that he was going to get in trouble. She testified the appellant looked "startled" and ran away.[3]

SE then immediately called the building's watchman, her husband, and the Bahraini police. Soon thereafter, the watchman and VE located a calm and cooperative appellant still on the same floor of the apartment complex. VE testified that when he arrived at the scene the appellant "told me that he heard someone screaming and as a Marine, it was his duty to rescue someone who is in distress."[4] SE then approached the appellant who denied he was in her apartment and then said words to the effect, "[w]hat are you going to do? I'm a U.S. [Marine.]"[5] The appellant was eventually escorted to the lobby and, following the arrival of several command members, was arrested by the Bahraini police.

The Government presented evidence that a partial profile of the appellant's DNA was located on the waist area of the shirt SE wore the night of the assault. Additionally, the Government presented several photographs, taken in the following days, showing bruising to SE's shoulder, arms, calf, and heel, along with swelling of her toe. SE testified all the depicted injuries occurred during her struggle to escape the appellant. Finally, the prosecution provided security video footage showing the appellant's progress through the building to SE's floor and then what appears to be an extremely upset SE running from, and then screaming at, the appellant as he walks down the second floor hallway.[6]

## I. Denial of Defense Expert Testimony

At trial, the defense called a forensic toxicologist to provide, in part, information and expert witness opinion testimony on the possibility the appellant was blacked-out during the charged offenses. Prior to ruling on the trial counsel's objection thereto, the military judge considered the expert's presentation, which included slides forecasting his testimony on blackouts.[7] The slides described blackouts as preventing memories from forming in the brain either completely (*en bloc*) or sporadically (fragmentary) and that blackouts occur when some people quickly drink large amounts of alcohol on an empty stomach or when their blood alcohol content exceeds certain thresholds. Ultimately, the military judge deemed the witness an expert in forensic toxicology on the effects of alcohol on the body and allowed his testimony for other purposes, to include the appellant's projected blood alcohol content and the attendant effects of

---

[3] Record at 458, 476-77.

[4] *Id*. at 415.

[5] *Id*. at 460; *see also* 478, 483.

[6] Prosecution Exhibit 1.

[7] Appellate Exhibit XXXVIII at 3 and 4; Record at 630-35.

alcohol at those levels.[8]  However, he did sustain the prosecution's objection, explaining no evidence had been offered indicating the appellant suffered any memory loss or was blacked out. During a colloquy with the military judge, the trial defense counsel (TDC) stated he did not have "a good-faith belief" that he would offer such evidence during the trial.[9]

**Analysis**

The appellant now argues that the military judge abused his discretion in excluding expert witness testimony on blackouts.  We review a military judge's ruling on the admissibility of expert testimony for an abuse of discretion.  *United States v. Baker*, 70 M.J. 283, 287 (C.A.A.F. 2011).  An abuse of discretion occurs when: "[the military judge's] findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law."  *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citations omitted).

An expert witness may provide testimony if it "will help the trier of fact to understand the evidence or to determine a fact in issue[.]"  MILITARY RULE OF EVIDENCE 702, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.).   However, the military judge must act as gatekeeper in determining the admissibility of expert testimony.  *United States v. Billings*, 61 M.J. 163, 169 (C.A.A.F. 2005).  *United States v. Houser*, 36 M.J. 392, 397 (C.M.A. 1993) provides the factors necessary to determine the admissibility of expert testimony:  "(A) the qualifications of the expert, MIL. R. EVID. 702; (B) the subject matter of the expert testimony, MIL. R. EVID. 702; (C) the basis for the expert testimony, MIL. R. EVID. 703; (D) the legal relevance of the evidence, MIL. R. EVID. 401 and 402; (E) the reliability of the evidence, *United States v. Gipson*, 24 M.J. 246 (C.M.A. 1987), and MIL. R. EVID. 401; and, (F) whether the 'probative value' of the testimony outweighs other considerations, MIL. R. EVID. 403."  (Citing MILITARY RULES OF EVIDENCE, MANUAL FOR COURTS-MARTIAL, UNITED STATES, 1984).  The appellant argues—and the Government agrees—that two *Houser* factors are at issue: relevance and probative value.[10]  We need only address relevance.

The military judge did not abuse his discretion when finding the proffered expert testimony on blackouts not legally relevant.  We find—like the military judge—that the absence of any evidence indicating the appellant was blacked-out or unable to remember events related to the offenses mooted any expert testimony related to blackouts.

Although the appellant now argues his "startled" appearance constitutes evidence he was blacked out, his TDC did not make this argument at trial.  *United States v. Lloyd*, 69 M.J. 95, 101 (C.A.A.F. 2010) (the general rule is "that a legal theory not presented at trial may not be raised for the first time on appeal absent exigent circumstances." (citations omitted)).  Even if we

---

[8] Record at 646.

[9] *Id.* at 634-35.

[10] Appellant's Brief of 9 Oct 2015 at 6 and Government Answer of 11 Jan 2016 at 13.

assume the existence of exigent circumstances, we still find the argument unpersuasive. Merely appearing startled in the subjective opinion of a lay-witness, whose only knowledge of the appellant was garnered during her attempts to escape from him, cannot reasonably be inferred to suggest the appellant was not forming memories or that his intoxication rendered his "mental faculties . . . so impaired that specific intent cannot be formed." *United States v. Mahoney*, No. 9400276, 1995 CCA LEXIS 399 at 4, unpublished op. (N.M.Ct.Crim.App. 22 Mar 1995) (citations omitted).

Further, even if we assumed the expert witness testimony on blackouts was improperly excluded, we find such error to be harmless beyond a reasonable doubt. Relief on an error of law may not be granted "unless the error materially prejudices the substantial rights of the accused." Art 59(a), UCMJ. "The test for nonconstitutional evidentiary error is whether the error had a substantial influence on the findings [and] it is the Government that bears the burden of demonstrating that the admission of erroneous evidence is harmless." *United States v. Flesher*, 73 M.J. 303, 318 (C.A.A.F. 2014) (internal quotations and citations omitted). We weigh four factors to determine whether the Government has carried its burden: "(1) the strength of the Government's case; (2) the strength of the defense's case; (3) the materiality of the evidence in question; and, (4) the quality of the evidence in question." *Id*. (citation omitted).

In applying this four-part test we find: One, the Government's case was strong. SE, who was awake and alert at the time of the assault, provided detailed cogent testimony of events preceding, during, and after the appellant entered her apartment. Her testimony was supported by VE's testimony, DNA evidence, photographic evidence of her injuries, and videotaped evidence of both SE and the appellant. Lastly, no evidence suggested SE possessed any motive to fabricate or falsely incriminate the appellant.

Two, the evidence supporting the defense's case was relatively weak. Other than raising the issue of the appellant's intoxication and providing character opinion testimony, little significant evidence was presented that might otherwise refute SE's narrative of the assault.

Three, the proffered testimony on alcohol-induced blackouts lacked materiality. Although the appellant was certainly intoxicated, there was ample evidence that his voluntary alcohol consumption did not prevent him from forming the requisite intent to commit the offenses under Charge I and II. This includes evidence the appellant stopped drinking more than an hour before the charged offenses; he easily made his way between the various floors of the apartment building; he appeared, based on the testimony of several witnesses and videotaped recordings, to be alert, sure-footed, and coordinated; there was no evidence the appellant vomited or passed out; and in the immediate aftermath of the assault, he was able to quickly craft a false exculpatory statement to explain his presence in or near SE's apartment.

And even if we assumed the overall quality of the expert's testimony was high (the fourth factor), after considering all the factors together we find that even if error did occur in denying the expert witness blackout testimony, it did not have a substantial influence on the verdict. Accordingly, we find the error, if any, to be harmless.

## II. Defense Challenge of a Panel Member for Cause

The appellant avers the military judge abused his discretion when he denied the TDC's challenge of Major RB who, during *voir dire*, stated a family member was a victim of a crime. Ultimately, Major RB was one of only two challenges for cause raised by the appellant. After the military judge granted one of those challenges, the appellant exercised his peremptory challenge to dismiss Major RB from the panel.

**Analysis**

A court member must be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." RULE FOR COURTS-MARTIAL 912(f)(1)(N), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). "R.C.M. 912 encompasses challenges based upon both actual bias and implied bias." *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008) (citations omitted). R.C.M 912 further states, "[w]hen a challenge for cause has been denied the successful use of a peremptory challenge by either party, excusing the challenged member from further participation in the court-martial, *shall preclude further consideration of the challenge of that excused member upon later review*." R.C.M. 912(f)(4) (emphasis added); *see also United States v. Walker*, No. 201100463, 2012 CCA LEXIS 396 at 9 (N.M.Ct.Crim.App. 26 Sept 2012) (consistent with the plain language of R.C.M. 912(f)(4), the "successful use of a peremptory challenge by either party against a member precludes appellate review of any denial of a challenge for cause against that member.").

The issue of whether the military judge abused his discretion in denying the challenge for cause against Major RB is thus waived and we will not address it.

## III. Victim Impeachment with Inconsistent Statements and Inconsistent Statement Instructions to the Members

The appellant argues the military judge abused his discretion by denying the defense the ability to impeach SE with prior inconsistent statements and then failing to give the defense requested instructions concerning the alleged inconsistent statements. We disagree.

During direct examination, SE testified she "didn't think [the appellant] was drunk."[11] On cross-examination, over trial counsel's objection, the TDC attempted to refresh SE's recollection[12] using a statement SE ostensibly made to the Bahraini Police the morning after the assault, which contained the words, "I think he realized that he made a mistake and woke up from his intoxication (because I believed that he was drunk)."[13] After the TDC showed her the statement, SE testified that she could not remember if the police officer who took the statement actually showed it to her or read it off a computer screen. SE agreed the police interview was in

---

[11] *Id*. at 460.

[12] *Id*. at 478-79.

[13] AE XXXV at 1.

6

English, but testified she did not remember telling the police officer the appellant was drunk. When asked by the TDC, she said the statement did not refresh her recollection.[14] While testifying, SE did not adopt the part of the statement that indicated she believed the appellant was intoxicated and no evidence was offered that she had ever done so. The TDC did not attempt to offer the statement as extrinsic evidence of a prior inconsistent statement under MIL. R. EVID. 613(b).

During cross-examination SE also stated she did not remember telling the emergency phone operator that the appellant was drunk. The TDC attempted to refresh her recollection with a summary of that phone call.[15] The trial counsel objected, explaining the summary was created by the police, not SE; was incorrectly translated from English to Arabic then back into English, and was a document that SE was not going to recognize.[16] The military judge, after verifying SE's signature was not on the summary, sustained the objection. Again, the TDC neither attempted to impeach SE with possible inconsistent statements contained within the summary nor offered it as extrinsic evidence of a prior inconsistent statement under MIL. R. EVID. 613(b).

Although the military judge instructed the members on the partial defense of involuntary intoxication and gave the prior inconsistent statement instruction for SE's husband's statements regarding the appellant's intoxication, he declined to do so for SE's purported pretrial statements on whether the appellant was drunk. In so declining, the military judge explained he would not provide the instruction based on a mere omission in the prior statement, but would do so if SE actually "said one thing in a prior statement and [then] she said something different here in court[.]"[17]

**Analysis**

We review a decision to exclude evidence for an abuse of discretion. *United States v. Harrow*, 65 M.J. 190, 199 (C.A.A.F. 2007). A military judge has considerable discretion to determine whether an inconsistency exists between a witness's trial testimony and a prior statement and to determine both admissibility and use of prior statements. *Id.* at 200 (citing *United States v. Damatta-Olivera*, 37 M.J. 474, 478, (C.M.A. 1993) (additional citation omitted).

Beyond attempting to refresh her recollection, the appellant did not establish that SE ever made any statement inconsistent with her testimony, nor did he attempt to offer the statement or summary created by the Bahraini police as extrinsic evidence of her prior inconsistent statements. As such, we decline to find the military judge abused his discretion for failing to permit impeachment under in MIL. R. EVID. 613.

Even if we assumed the military judge erred on his rulings under MIL. R. EVID. 612, we find that error harmless. "A finding or sentence of a court-martial may not be held incorrect on

---

[14] Record at 480-81.

[15] The TDC did not seek to attach the statement as an appellate exhibit, thus it is not in the record.

[16] Record at 485. The TDC, however, noted there was nothing on the document indicating it had been translated.

[17] *Id.* at 676.

the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Art. 59(a), UCMJ. "Applying nonconstitutional harmless error analysis, we conduct a *de novo* review to determine whether this error had a substantial influence on the members' verdict in the context of the entire case." *Harrow*, 65 M.J. at 200. To determine if the error is harmless, we apply the same four-part test used to assess the exclusion of expert testimony, *supra,* and weigh: "(1) the strength of the Government's case; (2) the strength of the defense's case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* (citing *United States v. Berry*, 61 M.J. 91, 98 (C.A.A.F. 2005).

In examining this test we apply the same analysis for prongs one and two as discussed in the harmless error analysis under AOE 1, *supra*.

Regarding the third prong, SE's out-of-court statement offered to rebut her testimony that "I didn't think that [the appellant] was drunk"[18] lacked a high degree of materiality. First, SE herself acknowledged on redirect-examination that it was possible the appellant was drinking that night.[19] Second, several other witnesses testified the appellant had consumed a significant amount of alcohol at the command party and was intoxicated.[20] That the members would disregard that cumulative testimony—and decide instead that the appellant was not intoxicated based on SE's unimpeached testimony—is highly unlikely. Lastly, the materiality of SE's potential out-of-court statement must be weighed in light of its permissible purpose, which here was for impeachment only. *See Harrow*, 65 M.J. at 200.

Finally, regarding the fourth prong, the quality of the evidence was, at best, questionable. Both the statement and the summary, based on Government proffers, had been translated between Arabic and English; SE did not sign either statement or summary; she did not find the statement refreshed her memory, and apparently she never saw the phone call summary before trial.

Considering the four factors together, we conclude that error, if any, in limiting impeachment based on SE's potential prior statements did not have a substantial influence on the verdict. Accordingly, we find the error harmless.

We next turn to whether instructional error occurred. We review the military judge's declination to provide a defense-requested instruction on prior inconsistent statements under an abuse of discretion standard of review. *Damatta-Olivera*, 37 M.J. at 478 (internal citation omitted). "The test to determine if denial of a requested instruction constitutes error is whether

---

[18] *Id*. at 460.

[19] *Id*. at 495.

[20] Gunnery Sergeant (GySgt) L acknowledged the appellant was drinking, saying only he did not appear to be "excessively" intoxicated. *Id.* at 373; Corporal (Cpl) N testified he could tell the appellant was "getting more drunk." *Id.* at 392; Sergeant M testified the appellant "appeared intoxicated, pretty much sh*t faced." *Id.* at 597; Mr. (former Cpl) W testified the appellant drank "at least four" pitchers of beer and that "he was intoxicated." *Id.* at 608-09; Cpl R testified the appellant "seemed very intoxicated." *Id.* at 620; and a defense forensic toxicologist opined, assuming the appellant drank three pitchers of beer, he had a blood alcohol content at the time of the assault between .23-.34. *Id.* at 654.

(1) the charge is correct; (2) it is not substantially covered in the main charge; and (3) it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation." *Id.* (internal quotation marks and citation omitted).

In applying this three-part test we find:

One, that military judge's instruction was correct. As noted above, other than attempting to use the prior statements to refresh SE's recollection, the TDC never invoked them for impeachment purposes nor attempted to offer the statement or telephonic summary as extrinsic evidence of a prior inconsistent statement under MIL. R. EVID. 613(b). Additionally, during cross-examination, SE never acknowledged making an inconsistent statement. Instead, she testified she did not "remember" making any statement about the appellant waking up from being drunk and that if she mentioned intoxication at all, it would have been in reference to the appellant's superiors who she thought "had been partying."[21] Neither statement was inconsistent with a prior statement that was actually used to impeach SE.

We need not assess the second part of the test—whether the instruction was substantially covered in the main instruction—because the instruction was not required.

Regarding the third prong of the test, we are satisfied, for the same reasons we used to assess the strength of the Government's case, *supra*, that even if we assumed the military judge erred in failing to give the requested instruction, that such failure did not deprive the appellant of a defense or seriously impair its effective presentation.

Accordingly, we find the military judge did not abuse his discretion when limiting his instruction on prior inconsistent statements.

## IV. Unreasonable Multiplication of Charges

The appellant alleges the sole specifications of attempted rape and assault consummated by a battery under Charges I and III present an unreasonable multiplication of charges with the rape specification under Charge II and requests that the specifications under Charges I and III be set aside and dismissed.[22] Citing *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001), the

---

[21] *Id.* at 482. As it turns out, SE was likely correct. All three "superiors" who responded in the aftermath of the assault had consumed alcohol at the command function or in their billeting area; in fact, two of the three, Captain H and GySgt L opted to not drive to SE's apartment complex because they had been drinking. *Id.* at 350, 370, and 596.

[22] The appellant was convicted of the following offenses:

> 1. The specification under Charge I, a violation of Art. 80, UCMJ, reads: In that [the appellant] . . . did at . . . Juffair, Bahrain, on or about 28 January 2014, attempt to commit a sexual act upon [SE], to wit, penetration of the vulva by the penis, by unlawful force, to wit: physical strength and violence sufficient to overcome, restrain, or injure [SE] and inflicting physical harm sufficient to coerce or compel submission be [SE].

> 2. The specification under Charge II, a violation of Art. 120, UCMJ, reads: In that [the appellant] . . . did at . . . Juffair, Bahrain, on or about 28 January 2014, commit a sexual act upon [SE], to

appellant argues all the offenses occurred within a short period of time, that the digital penetration occurred immediately after the appellant walked into SE's bedroom and unbuckled his belt, and that the assault consummated by a battery involved the grasping of SE's arms and shoulders during the digital rape. This, the appellant argues, misrepresents and exaggerates his criminality, and increases his punitive exposure because it requires him to register for two sex offenses and added another violent assault offense to his record for events all stemming from the same "drunken altercation."[23] We disagree.

**Analysis**

An unreasonable multiplication of charges claim is a question of law, which we review *de novo*. *Quiroz*, 55 M.J. at 338. R.C.M. 307 provides guidance on the preferral of charges and specifications, and paragraph (c)(4) directs that "[e]ach specification shall state only one offense. What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." We utilize the following factors help us to determine whether there is an unreasonable "piling on" of charges or specifications:

(1)   Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?

(2)   Is each charge and specification aimed at distinctly separate criminal acts?

(3)   Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?

(4)   Does the number of charges and specifications unreasonably increase the appellant's punitive exposure?

(5)   Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Quiroz*, 55 M.J. at 338.

The appellant did not object at trial. Accordingly, the first factor weighs in favor of the Government. Regarding the second factor, the Court of Appeals for the Armed Forces has previously upheld as separate and distinct acts an appellant's conviction for committing indecent acts, sodomy, and rape against the same victim, on the same evening, and where the indecent acts were not used to establish any elements of the of rape or sodomy charges. *United States v.*

---

wit: penetrating [SE's] vulva with his finger, by unlawful force, to wit: physical strength and violence sufficient to overcome, restrain, or injure SE and inflicting physical harm sufficient to coerce or compel submission by [SE].

3. The specification under Charge III, a violation of Art. 128, UCMJ, reads: In that [the appellant] . . . did at . . . Juffair, Bahrain, on or about 28 January 2014, unlawfully grasp [SE] by the shoulders, arms, and waist with his hands.

[23] Appellant's Brief at 30-31.

*Paxton*, 64 M.J. 484, 490 (C.A.A.F. 2007). So too here. The appellant's attempted penile rape occurred when he illegally entered SE's apartment, went into her bedroom, and unbuckled his pants. These actions were distinct from the digital rape that next occurred. The battery occurred after the digital penetration as SE attempted to escape the apartment and primarily in the living room vice the bedroom. This factor weighs in favor of the Government.

Nor did the charges exaggerate the appellant's criminality. Each was focused on a separate incident of unlawful conduct. After the appellant entered SE's bedroom and began unbuckling his pants, he would have avoided additional misconduct by complying with SE's demand to leave her house. Instead, he attacked and digitally raped her. When SE broke free he could have allowed her to leave. Instead, he chased her down and assaulted her. Rather than exaggerate, each charged offense accurately represents the appellant's unlawful acts against SE. We thus find this factor favors the Government.

The fourth factor also favors the Government. The appellant's rape conviction under Charge II carried a maximum punishment of confinement for life without eligibility for parole.[24] Accordingly, the appellant's punitive exposure was not exaggerated by the manner in which the conduct was charged. *United States v. Anderson*, 68 M.J. 378, 386 (C.A.A.F. 2010).

Finally, the appellant offers no evidence or argument to support a finding of prosecutorial overreaching, nor do we find any.

Finding all the *Quiroz* factors in favor of the Government, we conclude that the charges were not unreasonably multiplied.

### Conclusion

The findings and the sentence are affirmed.

Chief Judge BRUBAKER and Judge MARKS concur.

For the Court



R.H. TROIDL
Clerk of Court

---

[24] *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Maximum Punishment Chart, App. 12 at A12-4. *See also Coker v. Georgia*, 433 U.S. 584, 592 (1977) (holding the death penalty as punishment for the rape of an adult woman is forbidden by the Eighth Amendment); *United States v. Stebbins*, 61 M.J. 366, 369 (C.A.A.F. 2005) (holding that life without the possibility of parole is an authorized punishment for rape).