IN THE CASE OF


UNITED STATES, Appellee

v.

Allan P. JAMES, Airman
U.S. Air Force, Appellant

No. 04-0284

Crim. App. No. 34863

United States Court of Appeals for the Armed Forces

Argued November 8, 2004

Decided May 26, 2005

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and CRAWFORD, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Captain L. Martin Powell (argued); Major Terry
L. McElyea (on brief).

For Appellee:  Captain Stacey J. Vetter (argued); Colonel
LeEllen Coacher and Lieutenant Colonel Robert V. Combs (on
brief).

Military Judge:  Thomas W. Pittman


  **This opinion is subject to revision before final publication.**

United States v. James, No. 04-0284/AF

Judge ERDMANN delivered the opinion of the court.

Airman Allan P. James pleaded guilty to using and distributing ecstasy in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). He was sentenced to a dishonorable discharge, two years of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the findings and sentence and granted James 120 days of administrative confinement credit under Rule for Courts-Martial (R.C.M.) 305(k). On December 10, 2003, the United States Air Force Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. United States v. James, No. ACM 34863 (A.F. Ct. Crim. App. Dec. 10, 2003).

A judge may limit a defendant's cross-examination of a prosecution witness regarding the terms of a plea agreement entered into by the witness, so long as adequate inquiry into possible bias of that witness has been allowed through other lines of questioning. United States v. Nelson, 39 F.3d 705, 708 (7th Cir. 1994). During James's court-martial the military judge allowed the defense to cross-examine one of the prosecution's witnesses concerning some aspects of the witness's pretrial agreement. The military judge, however, precluded the defense from questioning the witness regarding a specific term of that agreement. We granted review of Issue I to determine

United States v. James, No. 04-0284/AF

whether the limitations placed on the cross-examination of the witness impermissibly infringed upon James's Sixth Amendment rights.[1]

A member of a court-martial panel may be removed for cause if it is shown that he or she "has an inelastic opinion concerning an appropriate sentence for the offenses charged." R.C.M. 912(f) discussion. During voir dire one of the potential members expressed reservations about discharging servicemembers who were convicted of minor drug crimes. She later agreed that if the evidence warranted, she would be able to vote for a punitive discharge. The military judge granted the Government's challenge for cause against the member. We granted review of Issue II to evaluate whether the military judge's decision to grant the challenge for cause was prejudicial error.[2]

---

[1]  In Issue I we granted review of the following:

WHETHER THE MILITARY JUDGE ERRED TO THE PREJUDICE OF APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM BY REFUSING TO PERMIT DEFENSE COUNSEL TO EXPLORE THE POTENTIAL BIAS OF PROSECUTION WITNESSES ARISING FROM PROMISES BY THE GOVERNMENT TO LIMIT PUNISHMENT OF THE WITNESSES IN EXCHANGE FOR COOPERATION WITH THE GOVERNMENT IN THE PROSECUTION OF APPELLANT.

[2]  In Issue II we granted review of the following:

WHETHER THE MILITARY JUDGE ERRED IN GRANTING THE PROSECUTION'S CHALLENGE FOR CAUSE (OVER DEFENSE OBJECTION) AGAINST A COURT MEMBER.

United States v. James, No. 04-0284/AF

We find that the military judge did not err in regard to either ruling. His ruling limiting cross-examination did not impermissibly infringe on James's Sixth Amendment rights and his grant of the Government's challenge for cause was not an abuse of discretion. Accordingly, we affirm the decision of the Court of Criminal Appeals.

I.  Cross-Examination of Airman Basic Rose

Background

During the sentencing phase of the trial, the prosecution called Airman Basic Scott Rose, James's alleged best friend, to testify against James. Rose testified that James had introduced him to ecstasy by providing him with his first ecstasy pill. He also testified about James's use and distribution of ecstasy on a number of occasions. At the time of his testimony, Rose had been tried by a general court-martial, had pled guilty pursuant to a pretrial agreement, and had been sentenced.

His pretrial agreement limited the period of confinement that could be approved by the convening authority to eighteen months. Although the maximum authorized punishment for Rose's crimes included the possibility of confinement for fifty-two years, his adjudged sentence was eighteen months and a punitive discharge. At the time of Rose's testimony he had not yet submitted clemency matters for the convening authority's consideration.

During cross-examination of Rose, the defense attempted to explore Rose's potential bias in favor of the Government by inquiring into Rose's offenses and the terms of his pretrial agreement. The military judge allowed the defense some latitude to explore potential motives for Rose to fabricate testimony because of his pretrial agreement. He ruled, however, that the terms of Rose's pretrial agreement concerning the maximum punishment the convening authority could approve were not relevant.

In response to questioning by the defense and trial counsel, Rose acknowledged: (1) that he had a pretrial agreement in his own court-martial; (2) that as part of that pretrial agreement he pleaded guilty and entered into a stipulation of facts; (3) that he had immunity for his testimony in James's court-martial; (4) that his pretrial agreement required him to cooperate with the Government against his best friend; and (5) that clemency was still pending in his case and as part of that process he would be able to tell the convening authority that he had cooperated and testified against James.

## Discussion

Military Rule of Evidence 608(c) provides that "[b]ias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." James argues that he was precluded from

5

adequately exploring the bias and motives of a witness against him by the military judge's rulings, in violation of his Sixth Amendment rights. He notes that in his pretrial agreement, Rose received a reduction in his possible sentence from fifty-two years to eighteen months. He argues that this potential windfall was relevant evidence of Rose's bias in favor of the Government, regardless of the fact that Rose had already been sentenced to eighteen months and would not realize any actual benefit of the sentence limitation.

The Government argues that the military judge exercised his discretion in placing reasonable limits on Rose's cross-examination in order to avoid confusion of the issues. It contends that James had ample opportunity to explore Rose's bias by exposing the fact that he was testifying pursuant to a pretrial agreement and by obtaining his admission that he might receive a benefit in the form of clemency from his testimony. The Government concludes that Rose's failure to actually benefit from the agreement means that the terms of the agreement are not relevant to show possible bias.

In United States v. Bahr, 33 M.J. 228, 232 (C.M.A. 1991), this court adopted the standard set forth by the Supreme Court in Delaware v. Van Arsdall, 475 U.S. 673 (1986), for determining whether cross-examination inquiring into the potential bias of a witness was properly limited:

> "[w]e have recognized that the exposure of a witness'
> motivation in testifying is a proper and important
> function of the constitutionally protected right of
> cross-examination." Davis [v. Alaska, 415 U.S. 308,
> 316-17 (1974)] (citing Green v. McElroy, 360 U.S. 474,
> 496 (1959)). It does not follow, of course, that the
> Confrontation Clause of the Sixth Amendment prevents a
> trial judge from imposing any limits on defense
> counsel's inquiry into the potential bias of a
> prosecution witness. On the contrary trial judges
> retain wide latitude insofar as the Confrontation
> Clause is concerned to impose reasonable limits on
> such cross-examination based on concerns about, among
> other things, harassment, prejudice, confusion of the
> issues, the witness' safety, or interrogation that is
> repetitive or only marginally relevant.

475 U.S. at 678-79. Because this court has not had occasion to specifically address the scope of cross-examination that a judge should allow concerning pretrial agreements, it is helpful to review the federal circuit court decisions that have considered the issue.

In United States v. Maceo, 947 F.2d 1191 (5th Cir. 1991), the Fifth Circuit found that the trial judge did not err when he limited the defense attorney's cross-examination of a witness regarding the terms of his plea agreement. The court noted that "[t]he Confrontation Clause does not prohibit a trial judge from limiting cross-examination where the testimony would confuse the issues, is repetitive or only marginally relevant." Maceo, 947 F.2d at 1200 (citing Van Arsdall, 475 U.S. at 679). The court found that the jury was well aware of the terms of the plea agreement and that limiting the cross-examination simply precluded additional questioning on the subject. Id.

7

United States v. James, No. 04-0284/AF

In <u>United States v. Nelson</u>, the Seventh Circuit found that the Sixth Amendment rights of the defendants were not violated where the trial judge prevented defense counsel from asking two prosecution witnesses "what penalties they might have faced without plea bargains." 39 F.3d 705, 707-08 (7th Cir. 1994). Defense counsel was allowed to impeach the motives of the witnesses by eliciting testimony that the witnesses were testifying under plea bargains as well as what benefits they were to receive from their agreements. <u>Id.</u> at 707.

The court in <u>Nelson</u> discussed the limitations of cross-examination and noted that courts must initially distinguish between the "'core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion.'" 39 F.3d at 709 (quoting <u>United States v. Saunders</u>, 973 F.2d 1354, 1358 (7th Cir. 1992)). Addressing the limitations imposed by the trial judge, the court found that there was no constitutional violation because the limitations:

> on cross-examination did not deny the defendants the opportunity to <u>establish</u> that the witnesses may have had a motive to lie; rather, the limitations denied them the opportunity to <u>add extra detail</u> to that motive. "'The exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" <u>Van Arsdall</u>, 475 U.S. at 678-79, 106 S. Ct. at 1435 (quoting <u>Davis v. Alaska</u>, 415 U.S. 308, 316-17, 94 S. Ct. 1105, 1110, 39 L. Ed. 2d 347 (1974)). But once this core function is satisfied by allowing cross-examination to expose a motive to lie, it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that

8

> point home to the jury.  The trial court may preclude "cumulative and confusing cross-examination into areas already sufficiently explored to permit the defense to argue personal bias and testimonial unreliability." United States v. Robinson, 832 F.2d 366, 373 (7th Cir. 1987), cert. denied, 486 U.S. 1010, 108 S. Ct. 1739, 100 L. Ed. 2d 203 (1988).

Id. at 708.  The court then went on to find that the trial judge had allowed the jury to hear enough evidence to make a "discriminating appraisal" of the witnesses' motives and biases, and that he did not abuse his discretion in limiting cross-examination.  Id.

Faced with somewhat different factual situations, other circuit courts have taken different views of the issue. In United States v. Roan Eagle, 867 F.2d 436 (8th Cir. 1989), a prosecution witness had pleaded guilty to manslaughter instead of murder as part of her plea agreement but had not yet been sentenced.  The Eighth Circuit found that under those circumstances an inquiry into the terms of the agreement was essential.  The court noted that the information is especially relevant if the witness has not yet been sentenced because "there is a continuing incentive to give testimony that strengthens the prosecution's case."  Id. at 443.

In United States v. Schoneberg, 388 F.3d 1275 (9th Cir. 2004), the prosecution witness was a coconspirator whose plea agreement required his cooperation with the Government.  The jury was made aware of the plea agreement and also was told that

a term of the plea agreement reserved the possibility of a sentence reduction after the witness testified against his coconspirators. That term required the Government to file a post-sentencing motion to reduce the witness's sentence if it determined that he had provided "substantial assistance" to the Government through his testimony. Schoneberg, 388 F.3d at 1277-78.

The trial judge prohibited the defense attorney from cross-examining the witness as to whether his testimony was affected by the Government's promise to move for a sentence reduction if he provided them with "substantial assistance." Id. The Ninth Circuit found that this prohibition had the effect of keeping from the jury the fact that the witness was conscious, throughout his testimony, that the Government and not just the jury was judging the truthfulness of his statements. The court found that this consciousness gave him a motive to lie in favor of the Government and therefore was a relevant area for cross-examination. Id. at 1280.

Having reviewed the holdings in these cases, we conclude that the limitations placed on cross-examination by the military judge were within his discretion and did not affect James's core constitutional right to cross-examination. The members knew that Rose had received an agreement in exchange for his testimony and that pursuant to that agreement he had pleaded

guilty and entered a stipulation of fact.  They also knew that this agreement required him to cooperate with the Government in James's prosecution.  They knew that he had been granted immunity for his testimony in James's trial.  Finally, they knew that his clemency hearing was still pending and that he would be able to tell the convening authority that he had cooperated in James's prosecution.  As the Seventh Circuit noted in Nelson, once the defendant has been allowed to expose a witness's motivation in testifying, "it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury."  Nelson 39 F.3d at 708.

Additionally, we find it important to consider that although Rose entered into a pretrial agreement that promised a substantial reduction in sentence if he cooperated with the Government, he already had been sentenced to eighteen months of confinement by members who had no knowledge of the terms of the pretrial agreement.  This is distinguishable from both Roan Eagle and Schoneberg where the witnesses had yet to receive the benefit of their bargain with the Government and were therefore under a continuing obligation to comply with their agreements to testify against the defendant to obtain the promised relief.  Rose's only "continuing incentive" identified in this case was that his clemency appeal was pending before the convening authority and if he testified favorably he would be able to

inform the convening authority that he cooperated with the Government in James's trial.  As noted above, the military judge allowed the defense to bring these facts to the attention of the members and expose Rose's potential bias and motive to lie.

A military judge has wide discretion to limit repetitive cross-examination or to prohibit cross-examination that may cause confusion.  See Van Arsdall, 475 U.S. at 679.  The military judge in this case properly exercised this discretion and we affirm the decision of the Court of Criminal Appeals.

II.  Voir Dire of Major Winkler

Background

During voir dire of potential panel members, Major (Maj) Maryellen Winkler was questioned regarding her view of discipline in the Air Force and more specifically regarding her views on punishments for drug crimes.  In responding to those questions Maj Winkler mentioned her concern over a newspaper article that she had seen regarding a large drug bust in which a number of Air Force members were caught and punished.  Her testimony in response to questions from the trial and defense counsels and the military judge is as follows:

Examination by Circuit Trial Counsel:

Q.  Major Winkler in response to one of my questions regarding progressive discipline, you said that you didn't feel that a court-martial may be the appropriate starting point for someone who has admitted guilty to use and illegal distribution of drugs.  Could you please expound on your answers to why you feel that way?

12

A.  I truly feel, looking at the individual, it almost feels like it is a one shot deal. You have one shot at making a mistake and then that's it. Of course everyone has seen the Air Force Times showing the big drug bust in the Virginia area and all the airmen and airman basics, senior airman and what sentences they have received, etcetera, etcetera, and I thought about that before I even knew what this case was about and it was kind of shocking to me.

Q.  The length of time?

A.  The length of time and what they received, yes.

Q. Will you be thinking about that back in the deliberation room?

A.  I'm human and that is just how I feel.  Yes, I would be. It might be just my personality, it just might be looking at him, he's young, does he just deserve one shot and hopefully not getting what they gotten.  There is a conflict in my mind.  But, I didn't hear any of the evidence and I don't know exactly what is going on, etc.

Q.  Let me ask you . . . do you think that drug use is more of a medical problem then [sic] . . .

A.  No, not at all.  I guess maybe what I am thinking is that we are all young, we all do stupid stuff sometimes, and one mistake shouldn't kill us . . . .

. . . .

Examination by Circuit Defense Counsel:

Q.  Ma'am, if the military judge instructs you that you are to consider -- I expect that he will instruct you that you are to consider the full range of punishments, from no punishment up to the maximum punishment, can you assure the court, both the government and defense, that you will do that?

A.  I think I can, because we are looking at him totally not as a young kid, we are looking at him as a military member too.

. . . .

13

Examination by the Military Judge:

Q.  And let me just ask you, do you feel comfortable sitting on this case?

A.  No, I don't.

Q.  And why is that?

A.  Just because, again, I have read -- you just see in the paper all the time and the punishments that the kids got, the young airmen got in Virginia -- we have no tolerance of drugs whatsoever in the military, which we know that.  Yet on the other hand, I just feel that a young person shouldn't be probably kicked out and put in jail or whatever.

Q.  I guess I am trying to get you to go ahead and conclude for me.  What is the conclusion?

A.  I just feel that he deserves more of a shot than one error in his career.

Q.   When I asked you if you feel uncomfortable sitting in the case, do you feel that you can perform your duties in sitting on a case?

A.   Definitely, Sir, I can perform my duties.  Would I feel comfortable with myself, yes, because it is my duty. Will I do the right thing?  Yes, I will.

. . . .

Q.   And you mentioned these Air Force Times articles that you have read . . . [.]

. . . .

A.   Actually there was a big bust in Virginia, the Virginia area, I think there were about 20 people that were listed in the Air Force Times ranging anywhere from an airman basic -- I think the highest rank was a senior airman, I am not sure.  Then I saw all their sentences and I was shocked, I was taken back.

Q.   At what?

14

A. Their sentences. I really felt that while these -- again, I didn't hear any of their cases, but I just thought, wow, these guys made a mistake and look at the punishment for this. I am not making myself clear am I?

Q. No, it is important since you have had some obviously careful thought about the offense of which the accused is now before this court for sentencing, that you disclose to both parties what that careful thought is. Can you be fair to both the government and the accused in this case?

A. Yes, I feel I can be fair, Sir.

The prosecution challenged Maj Winkler for cause on the grounds of an "inelastic predisposition in favor of the defense." The military judge granted the challenge stating:

Well, my recollection is that she not only said she was shocked twice by a punitive discharge, but shocked by another form of punishment as well, that may have been confinement. She also said that. "She hated or hates to see the airmen kicked out for this offense" were the words I recall her using in reference to those discharges. She seemed almost relieved when I asked if she would be uncomfortable sitting on the court, as though it was going to be an opportunity for her not to have to sit on the court. I think at the same time she is professional enough to let us know that as much as she hates to see a sort of punishment like this, or as much as she is shocked, she is a professional officer, to let us know that she would try and do her best to be fair in performing her duties. It just seems to the court, from viewing her and viewing her expressions as she described the Air Force Times article in regard to those other cases, that she would have an extremely difficult time in sitting on this case and doing just what she promised to do, which was consider the entire range of punishments, just wavering a little bit in that area is cause for concern as well. I am going to grant the challenge for cause.

Discussion

This court has held that an accused "'has a constitutional right, as well as a regulatory right, to a fair and impartial panel.'" United States v. Strand, 59 M.J. 455, 458 (C.A.A.F. 2004) (quoting United States v. Wiesen, 56 M.J. 172, 174 (C.A.A.F. 2001)). A member may be removed for cause if it is shown that he or she should not sit "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N). The discussion accompanying this rule provides that "an inelastic opinion concerning an appropriate sentence for the offenses charged" may be grounds for challenge under this provision. R.C.M. 912(f) discussion. The party that makes the challenge for cause has the burden of proving that grounds for a challenge exist. R.C.M. 912(f)(3).

Generally, this court has addressed challenges for cause where those challenges were denied.[3] In evaluating a military judge's ruling on a challenge for cause, the court has found it appropriate to recognize the military judge's superior position to evaluate the demeanor of court members. A military judge's ruling on a challenge for cause will therefore not be reversed

---

[3] It is only in cases involving the death penalty that the court has been asked to review a challenge for cause that was granted. See United States v. Curtis, 33 M.J. 101, 107 (C.M.A. 1991); United States v. Gray, 51 M.J. 1, 31-32 (C.A.A.F. 1999).

16

United States v. James, No. 04-0284/AF

absent a clear abuse of discretion.  See United States v. McLaren, 38 M.J. 112, 118 (C.M.A. 1993); United States v. White, 36 M.J. 284, 287 (1993).

In evaluating challenges for cause based on claims of "inelastic attitude," this court has held that "an unfavorable inclination toward an offense is not automatically disqualifying.  'The test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions.'"  McLaren, 38 M.J. at 118 (citations omitted) (quoting United States v. McGowan, 7 M.J. 205, 206 (C.M.A. 1979)).

In the context of challenges brought by a defendant, this court has stated that "military judges must liberally grant challenges for cause."  United States v. Downing, 56 M.J. 419, 422 (C.A.A.F. 2002); see also McLaren, 38 M.J. at 118 (quoting United States v. Glenn, 25 M.J. 278, 279 (C.M.A. 1987)).  The "liberal grant" policy supports the UCMJ's interest in ensuring that members of the military have their guilt or innocence determined "by a jury composed of individuals with a fair and open mind."  United States v. Smart, 21 M.J. 15, 18 (C.M.A. 1985) (quoting United States v. Deain, 5 C.M.A. 44, 49, 17 C.M.R. 44, 49 (1954)).  It is a response to the unique nature of the military justice system "because in courts-martial peremptory challenges are much more limited than in most

17

civilian courts and because the manner of appointment of court-martial members presents perils that are not encountered elsewhere." Id. at 19; see also Glenn, 25 M.J. at 279. Because the Government rather than the defendant brought this challenge for cause, we must first consider whether the "liberal grant" policy is applicable under those circumstances.

Unlike the convening authority, who has the opportunity to provide his input into the makeup of the panel through his power to detail "such members of the armed forces as, in his opinion, are best qualified for the duty," see Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2)(2000); see also R.C.M. 503(a)(1), the defendant has only one peremptory challenge at his or her disposal.[4] See Glenn, 25 M.J. at 279. The liberal grant rule protects the "perception or appearance of fairness of the military justice system." United States v. Dale, 42 M.J. 384, 386 (1995). Given the convening authority's broad power to appoint, we find no basis for application of the "liberal grant" policy when a military judge is ruling on the Government's challenges for cause.

---

[4] The staff judge advocate also may have the power to excuse members before the court-martial is assembled, and the trial counsel then still has one peremptory challenge during the court-martial itself. See R.C.M. 505(c)(1)(B); R.C.M. 912(g)(1). The Government therefore has ample opportunity to affect the makeup of the panel before trial defense counsel has any opportunity for input.

18

We turn next to the central question of whether the military judge's finding that Maj Winkler "would have an extremely difficult time in sitting on this case and doing just what she promised to do, which was consider the entire range of punishments," was clearly erroneous. Maj Winkler repeatedly expressed concern with the harsh punishments handed out for drug crimes in the Air Force. She clearly expressed her feeling that "we are all young, we all do stupid stuff sometimes, and one mistake shouldn't kill us." She also stated that she would feel uncomfortable sitting as a member because of her beliefs. While Maj Winkler provided appropriate responses to rehabilitative questions, the military judge not only was able to hear her responses, he was able to evaluate her demeanor by "viewing her and viewing her expressions."

We conclude that the military judge did not abuse his discretion in granting the Government's challenge to Maj Winkler on the basis of an "inelastic predisposition." The military judge found that Maj Winkler wavered when asked if she could consider the entire range of punishments and expressed her concerns regarding punishments in drug cases both verbally and nonverbally. We decline to find his conclusion that she would have trouble considering the entire range of punishments to be clearly erroneous.

United States v. James, No. 04-0284/AF

We also do not see evidence that the military judge applied the liberal grant policy in reaching his conclusion. The record reflects that he carefully considered all of Maj Winkler's responses and her demeanor in reaching his conclusion. Accordingly, we affirm the decision of the Air Force court as to Issue II.

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed as to Issues I and II.