# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant WILLIAM D. RECORD**
**United States Army, Appellant**

ARMY 20130721

Headquarters, United States Army Cadet Command and Fort Knox
Gregory R. Bockin, Military Judge (arraignment & trial)
Steven E. Walburn, Military Judge (motions hearing)
Colonel Christopher T. Fredrikson, Staff Judge Advocate

For Appellant: Lieutenant Colonel Jonathan F. Potter, JA; Major Amy E. Nieman, JA; Captain Patrick J. Scudieri, JA (on brief)

For Appellee: Colonel John P. Carrell, JA; Major A.G. Courie III, JA; Major John K. Choike, JA; Captain Jihan Walker, JA (on brief)

31 July 2015

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of aggravated sexual assault of a child who had attained the age of twelve years old but not sixteen years old, of aggravated sexual assault by causing bodily harm, and two specifications of indecent acts, in violation of Article 120 Uniform Code of Military Justice, 10 U.S.C. §920 (2006) [hereinafter UCMJ]. The panel sentenced appellant to a dishonorable discharge, confinement for six years, reduction to the grade of E-1, and a reprimand. The convening authority approved the sentence as adjudged.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises six assignments of error to this court and raises matters

pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Three of the assigned errors warrant discussion but no relief. We find the matters raised pursuant to *Grostefon* are without merit.

## BACKGROUND

Appellant began sexually grooming his fifteen-year-old step-daughter, WR, to engage in sexual acts with him by repeatedly asking her to undress to demonstrate her "trust" in him. Eventually, WR capitulated and did as appellant requested. WR's relenting to appellant's request began an escalating period of sexual activity during which appellant inserted his thumb into WR's mouth to teach her how to perform fellatio, digitally penetrated her vagina, and inserted his penis into her vagina. Eventually, WR told a high school classmate about her step-father's behavior and the disclosure was investigated.

Appellant chose to be tried by an enlisted panel. Before trial, panel members completed a questionnaire which included several questions on sexual assault training and investigations, recent senior leadership comments related to sexual assault, and media reporting concerning sexual assault.

At trial, defense counsel requested individual voir dire of a potential panel member, Colonel (COL) MS, based on his written responses to the questionnaire. Colonel MS wrote: "I admit I may feel conflicted to vote not guilty based on some of the media messages – I would just look really hard at the evidence to ensure before I voted 'not guilty' that I was sure the individual was not guilty."[1]

During individual voir dire, COL MS explained that the comments from leadership and the media led him to believe that sexual assault was more prevalent or tolerated in the military but that it was not consistent with his personal experience. Colonel MS also specifically addressed his written response: "I honestly think that I . . . would really assess if I've been somewhat naive in my experience in the Army for the last [twenty-five] years and maybe it's more prevalent than . . . I have been led to believe."[2]

Defense challenged COL MS for cause and argued that regardless of his responses during individual voir dire, his written response on the questionnaire demonstrated that he would improperly shift the burden of proof to the defendant to

---

[1] Colonel MS was responding to the question: "Would you feel conflicted to vote 'not guilty' based solely on messages you may have heard in the media?"

[2] Colonel MS also wrote in his questionnaire: "[The comments from political leaders in Washington] even made me rethink allowing my daughter to enter the military despite my own service and my son currently serving."

prove he was not guilty. The government opposed defense's challenge for cause and argued COL MS's verbal responses demonstrated he could nonetheless be fair and impartial in appellant's case, despite his written responses.

After significant back-and-forth with counsel on the issue, the military judge denied defense's challenge for cause against COL MS. At the conclusion of voir dire, defense used their peremptory challenge on a different panel member. As a result, COL MS was empaneled and served as the president. After voir dire and challenges, the panel consisted of five officers and three enlisted members.

The victim, WR, was the first government witness to testify on the merits. After providing a lengthy emotional narrative, WR became physically ill in response to defense counsel's questions related to the appearance of appellant's penis. WR leaned over her knees and began gagging and coughing as though she was vomiting. The military judge recessed the court to allow WR to regain her composure.

During the recess, Sergeant Major (SGM) LH, approached COL MS and informed him that a memory she suppressed for a decade was brought to life during the victim's testimony. Sergeant Major LH was upset and shared what she remembered with COL MS outside the ear shot of the remainder of the panel. When the panel returned to the courtroom, COL MS brought the disclosure to the attention of the court through a note.[3]

After the military judge and both counsel reviewed the note, the trial counsel remarked that if SGM LH was dismissed, there would no longer be a quorum of at least one-third enlisted members. The court recessed for the evening and reconvened the following afternoon.

During the recess that evening, the military judge conducted a Rule for Courts-Martial [hereinafter R.C.M.] 802 conference where he discussed with counsel what happens if the panel is reduced below a one-third enlisted quorum and the need to have additional members standing by. The next day, the military judge conducted a second R.C.M. 802 conference with counsel to discuss the voir dire procedures that would be followed to address the issue raised by SGM LH.

---

[3] Colonel MS's note to the Court read:

> During the last comfort break, [SGM LH] informed me
> that this testimony resurfaced an incident from her past
> that she had apparently suppressed. The incident involved
> her daughter being molested on an Army installation. She
> informed me that it does not affect her impartiality, but
> she wanted to be honest about it now that she remembered
> the incident.

During voir dire, SGM LH stated she remembered an incident from ten years prior in which her eleven-year-old daughter was made to perform oral sex on an eleven-year-old dependent boy who lived in their building while stationed in Korea. As a result of this incident, the boy and his family left Korea and SGM LH and her daughter underwent psychological counseling for three months and pastoral counseling for a year. Sergeant Major LH asserted when she was re-questioned that she could still be impartial in appellant's case despite her recollection. Next, COL MS was individually voir dired and stated that SGM LH's disclosure would not affect his ability to be fair and impartial in appellant's case.

The military judge asked counsel if they had challenges for cause. Initially, neither counsel had a challenge for COL MS. The military judge granted the government's unopposed challenge for cause against SGM LH. This resulted in the panel being reduced below the one-third enlisted requirement needed to maintain a quorum.

The government then attempted to use their unused peremptory challenge to remove COL MS to re-establish quorum and based on the "additional information that [came] to light." In arguing for a good cause exception for the peremptory challenge, the trial counsel stated that "new information has come about that may have some influence on the members' impartiality, potentially." However, in accordance with R.C.M. 912(g)(2) they could not do so as the use of a peremptory challenge after the presentation of evidence to the members is prohibited.

The government then reversed their earlier position and challenged COL MS for cause based on implied bias. The government argued that a member of the public observing the proceedings might conclude COL MS possessed an implied bias because he was a witness to SGM LH's emotional personal recitation of her daughter's sexual experience – "similar in nature to the accused in this case."

The defense objected indicating that the government was making a similar argument to what defense made earlier in the normal course of voir dire when their challenge was denied. Defense argued that COL MS stated he could be impartial, just as he did earlier, so the government's challenge should be denied.

The military judge noted that the situation had changed since the earlier voir dire in that "SGM LH pull[ed] [COL MS] aside and disclosed certain things to [him]." The military judge then granted the challenge for cause stating:

> It's the court's finding that in an abundance of caution
> and in the *current liberal granting of challenges for cause*
> given this unique circumstance that he was pulled aside
> by another panel member and she made certain disclosures
> to him, in an abundance of caution and in an attempt to
> maintain impartiality and fairness for [appellant] the court

4

> is going to grant the challenges for cause for both [SGM LH]
> and [COL MS].

(emphasis added).

## LAW AND DISCUSSION

*Applying a Liberal Grant Mandate to a Government Challenge for Cause*

On appeal, appellant argues that the military judge erred by applying the liberal grant mandate to a government challenge for cause for implied bias against COL MS. Appellant also claims the military judge was biased because he manipulated the system through "initiating and granting" the government challenge for cause against COL MS. Appellant asserts that the error was structural, thus obviating the need to show prejudice. We disagree that the military judge created an appearance of bias that is tantamount to structural error.[4] While we do find the military judge erred by improperly applying the liberal grant mandate to a government challenge and finding implied bias, we do not agree that the military judge's actions constitute structural error. Additionally, we do not find prejudicial error.

"As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel." *United States v. Downing*, 56 M.J. 419, 421 (C.A.A.F. 2002) (quoting *United States v. Wiesen*, 56 M.J. 172, 174 (2001)). Rule for Courts-Martial 912(f)(1)(N) requires a panel member be excused when it is "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008)) (additional citation omitted).

We review a challenge for cause based on implied bias under a standard "less deferential than abuse of discretion, but more deferential than de novo review." *Bagstad*, 68 M.J. at 462 (quoting *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006)) (additional citation omitted). A military judge's determination on issues of actual or implied member bias are based on the totality of the circumstances of each case. *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007). Implied bias is "viewed through the eyes of the public, focusing on the appearance of fairness." *Bagstad*, 68 M.J. at 462 (quoting *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)) (internal quotation marks omitted). Therefore, we

---

[4] The Supreme Court has found that judge's rulings do not result in the appearance of bias "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). That is not the case here.

employ an objective standard when reviewing a military judge's decision regarding implied bias. *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004).

Where a military judge considers a challenge based on implied bias, the law recognizes the duty of the military judge to liberally grant defense challenges, and place his reasoning on the record; "instances in which the military judge's exercise of discretion will be reversed will indeed be rare." *Clay*, 64 M.J. at 277. That said, there is no basis, however, for application of the "liberal grant" policy to government challenges for cause. *United States v. James*, 61 M.J. 132 (C.A.A.F. 2005). The liberal grant rule is intended to protect the accused, not the government. *Id.* at 139.

We find that the military judge erred when he applied the liberal grant mandate to the government's challenge for cause against COL MS. *Id.* It is possible that the military judge mentioned the liberal grant mandate because he was renewing his previous decision denying defense's challenge for cause; if such was the case he did not articulate it.

While we find error, we reject appellant's claim that it was structural. "Structural errors are those constitutional errors so affecting the framework within which the trial proceeds, that the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *United States v. McMurrin*, 70 M.J. 15, 19 (C.A.A.F. 2011) (internal citation and quotation marks omitted). There is a "strong presumption against structural error." *Id.*

> The Supreme Court has recognized two tests for structural error: (1) when a court is faced with 'the difficulty of assessing the effect of the error,' as in: *Waller v. Georgia*, 467 U.S. 39, 49 (1984) (violation of the public-trial guarantee is not subject to harmlessness review because "the benefits of a public trial are frequently intangible, difficult to prove, or a matter of chance"); . . . and (2) when harmlessness is irrelevant, as in *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984) ("Since the right to self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis").

*United States v. Brooks*, 66 M.J. 221, 224 (C.A.A.F. 2008).

Improperly granting a government challenge under these circumstances does not fit either structural error category. These type of challenges typically arise in a scenario in which a defense challenge has been denied, the challenged member is empaneled, and the convicted appellant claims the panel was tainted by the presence

of the challenged member. Here, COL MS was removed from the panel and appellant was tried by a panel that was otherwise impartial and fair. Therefore, in this case, we determine next whether it materially prejudiced his substantial rights. *Id.*

Although the military judge erred in both stating the law and applying it, finding prejudice is another matter. Appellant essentially argues that a panel member he originally challenged for cause should now be retained – for no articulated reason other than what appears to be a desire to reduce the panel below the necessary one-third enlisted member composition. While it is apparent the government's challenge to remove COL MS was done primarily to regain quorum – and arguably the military judge granted the challenge for cause to regain quorum – "[t]here is no reason to suspect that a different mix of members would have produced results more favorable to appellant." *See United States v. Newsom*, 29 M.J. 17, 21 (C.M.A. 1989). Our superior court does "not subscribe to the numbers game," and nor shall we. *Id.* at 21. Appellant has a right to a fair and impartial panel but not "a right to the panel of his choice." *Wiesen*, 56 M.J. at 174. As in *Newsome*, the record establishes that the members who sat were thoroughly qualified and suited to sit in judgment of appellant. *See Newsom*, 29 M.J. at 21.

Accordingly, while we find errors in the military judge's approach and application of the law, we do not find that the errors materially prejudiced appellant's substantial rights – especially in light of the fact that the panel member defense originally challenged for cause was actually excused. *See United States v. Owens*, NMCCA 200100297, 2005 LEXIS 182, at *12 (N.M. Ct. Crim. App. 17 Jun. 2005) (unpublished).

*Allowing a Government Witness to Testify About Appellant's Silence*

We review allegations of improper reference to an accused's right to remain silent de novo. *See United States v. Clark*, 69 M.J. 438, 443 (C.A.A.F. 2011).

During direct examination of a government investigator, the trial counsel asked whether appellant "cooperate[d]" when the witness attempted to interview appellant. The witness responded, "No ma'am, he did not." The defense neither objected to the question nor the witness response.

We accept the government's concession that this was plain error. We next examine the effect of this error. "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is 'whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence.'" *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005)(quoting *United States v. Davis*, 26 M.J. 445, 449 n.4 (C.M.A. 1988)). We examine this by weighing "(1) the strength of the Government's case, (2) the strength of the defense's case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *United*

7

*States v. Alameda,* 57 M.J. 190, 199 (C.A.A.F. 2002) (quoting *United States v. Kerr,* 51 M. J. 401, 405 (C.A.A. F. 1999)). After reviewing the record and weighing the factors, we conclude the error to be harmless beyond a reasonable doubt.

*Staff Judge Advocate's Failure to Comment on Legal Error
Raised in Post-trial Matters*

The defense submitted clemency matters on behalf of appellant, alleging two "legal issues" and three clemency matters. In the section entitled "clemency matters," appellant argued factual and legal insufficiency. In the addendum, the Staff Judge Advocate (SJA) specifically addressed the legal issues outlined in appellant's legal section but did not specifically address factual and legal sufficiency. The SJA culminated his advice to the convening with this language: "Having fully reviewed the defense submissions, I adhere to my previous recommendation in this case to approve the sentence."

We believe the SJA incorporated by reference appellant's legal and factual sufficiency issue. To the extent that he did not, we have thoroughly reviewed the claims of legal error found in appellant's clemency matters, and find they lack merit and would not have resulted in a favorable recommendation by the SJA or any corrective action by the convening authority. *United States v. Hill*, 27 M.J. 293, 297 (C.M.A. 1988).

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8