****CORRECTED COPY – DESTROY ALL OTHERS****

# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

### Senior Airman CORY J. CALHOUN
### United States Air Force

### ACM 38689

### 7 January 2016

Sentence adjudged 28 April 2014 by GCM convened at Davis-Monthan Air Force Base, Arizona. Military Judge: Christopher M. Schumann (sitting alone).

Approved Sentence: Dishonorable discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction to E-1.

Appellate Counsel for the Appellant: Daniel Conway (civilian counsel).

Appellate Counsel for the United States: Major Meredith L. Steer and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and ZIMMERMAN
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of two specifications of aggravated sexual contact with a child and two specifications of indecent liberties with a child, in violation of Article 120, UCMJ, 10 U.S.C. § 920.[1] The court sentenced him to dishonorable discharge,

---

[1] Pursuant to Rule for Courts-Martial 917, the military judge granted a defense motion for a finding of not guilty with regard to one specification of wrongfully possessing child pornography and one specification of wrongfully possessing child erotica, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The court members also found

confinement for 12 years, forfeiture of all pay and allowances, and reduction to E-1.[2] The convening authority approved the sentence as adjudged.

Before us, Appellant contends:  (1) the military judge erred in denying his challenge for cause against one of the court members, (2) the evidence is factually and legally insufficient to sustain the findings of guilty, and (3) his two convictions for indecent liberties with a child (Specification 10 and Specification 13 of Charge I) are multiplicious or constitute an unreasonable multiplication of charges.

We find that the convictions for Specification 10 and Specification 13 of Charge I constitute an unreasonable multiplication of charges.  Finding no other error that materially prejudices a substantial right of Appellant, we affirm the remainder of the findings and the sentence.

*Background*

In May 2009, Appellant married Ms. AVC, a single mother of two boys.  The older of the boys, JEV, was born in September 2005 and the younger, JAV, was born in January 2008.  In November 2009, Ms. AVC, the two boys, and Appellant moved into quarters at the base where he was assigned.

In December 2011—while Appellant was deployed overseas—JEV and JAV began to fight in their on-base housing.  JEV complained to Ms. AVC that his younger brother had kicked him in the head.  When Ms. AVC asked JAV why he had done so, he replied that JEV had tried to "tickle [his] butt crack."  When Ms. AVC told JEV he should not be doing such a thing, he began to cry.  JEV said, "But Cory [Appellant] does it to us all the time."  Concerned by this statement, Ms. AVC then talked to her boys privately in separate rooms.  Continuing to cry, JEV demonstrated for his mother the back and forth motion Appellant used when inserting his fingers into the boys' buttocks. JEV told his mother that it hurt when Appellant would "butt tickle" him.  Ms. AVC then spoke privately with JAV, who provided a similar account and description of Appellant's penetrating the boys' buttocks with his hand.

Ms. AVC reported the alleged abuse to authorities.  In the months thereafter, JEV and JAV made further disclosures regarding Appellant's repeated molestations of them while they were living with him.  Other details pertinent to this case are discussed below.

---

Appellant not guilty of seven specifications of aggravated sexual contact with a child, two specifications of indecent liberties with a child, two specifications of indecent acts with a child, and one specification of sodomy with a child, in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920, 925.

[2] The court-martial order (CMO) in this case incorrectly states that the sentence was adjudged by military judge. We hereby order a corrected CMO reflecting that Appellant was sentenced by officer and enlisted members.

## I. Challenge for Cause

During voir dire a prospective court member, TSgt DM, indicated that a high school girlfriend of his had been sexually abused by a family member. Based upon this disclosure and follow-on responses, trial defense counsel challenged TSgt DM for cause. The military judge denied the challenge, and Appellant now argues the judge erred in doing so.

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)).

The test for assessing an R.C.M. 912(f)(1)(N) challenge for implied bias is "objective, viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *Clay*, 64 M.J. at 276) (internal quotation marks omitted). "The hypothetical 'public' is assumed to be familiar with the military justice system." *Id.* (citing *United States v. Downing*, 56 M.J. 419, 423 (C.A.A.F. 2002)). We review issues of implied bias "under a standard less deferential than abuse of discretion but more deferential than de novo." *United States v. Strand*, 59 M.J. 455, 458 (C.A.A.F. 2004) (quoting *United States v. Miles*, 58 M.J. 192, 195 (C.A.A.F. 2003)) (internal quotation marks omitted). "[M]ilitary judges must follow the liberal-grant mandate in ruling on challenges for cause, but we will not overturn the military judge's determination not to grant a challenge except for a clear abuse of discretion in applying the liberal-grant mandate." *United States v. White*, 36 M.J. 284, 287 (C.M.A. 1993). "The liberal grant mandate recognizes the unique nature of military courts-martial panels, particularly that those bodies are detailed by convening authorities and that the accused has only one peremptory challenge." *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006) (citing *United States v. James*, 61 M.J. 132, 139 (C.A.A.F. 2005)).

In the present case, TSgt DM indicated that the abuse of his high school girlfriend occurred before they began dating, that their dating relationship ended in 1996, and he had presently been married to another woman for nearly eleven years. TSgt DM stated that, although he and the girlfriend now lived far apart, he remained in contact with her and considered her a close friend. Despite their closeness, however, the girlfriend had never told TSgt DM the details of her abuse—he knew only that the abuser had been a family member, perhaps an uncle—and he did not know what impact the abuse had on her. TSgt DM stated that he was sorry it had happened, but the abuse had otherwise had no effect upon him personally. TSgt DM stated what happened to his ex-girlfriend was long ago and he could differentiate between her situation and the present case.

ACM 38689

When initially asked by trial defense counsel whether he thought he would be an appropriate person to sit on the panel, TSgt DM stated it would be for "you guys to decide," but the abuse happened years ago. He did not think about the abuse unless the ex-girlfriend brought it up, and otherwise it did not come to his mind. Trial defense counsel continued to press the subject, and TSgt DM finally acquiesced that someone watching the trial "probably wouldn't" think it fair to Appellant if he was a court member because his ex-girlfriend was young when she was abused and Appellant's case involved a "youngster." Ultimately, however, TSgt DM expressed a firm that belief that he could "be fair and impartial." When asked to search for a reason why being a court member in this case could be hard, TSgt DM candidly expressed that it was his duty to not let his emotions get the better of him if he were to think of his own child. He understood the grave responsibility of being a court member, and that it was his duty to "consider somebody's life" and "what happens afterwards [to Appellant]."

We find that the military judge did not abuse his discretion in denying the challenge for cause against TSgt DM. The military judge observed TSgt DM's demeanor when answering the questions put to him to determine credibility in the case of an actual bias challenge. The judge then applied an objective test for implied bias, stating his assessment of the member "in the eyes of the public" and also considering the liberal grant mandate. This court "does not expect record dissertations" on a judge's denial of an implied bias challenge, and here, the military judge's analysis provided "a clear signal that the military judge applied the right law."[3] *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015) (internal quotations and brackets omitted). We find no error in denying the challenge for cause against TSgt DM.

## II. *Factual and Legal Sufficiency*

Appellant contends the evidence is factually and legally insufficient to prove he committed any of the four offenses of which he stands convicted.

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). "The test for legal sufficiency of the evidence is 'whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt.'" *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002)

---

[3] TSgt DM conceded that someone watching the trial might question his participation. In ruling upon the challenge for cause, the trial judge declared that he did not give weight to this concession, because TSgt DM was not in a position to analyze his responses under the proper legal standard. We, however, in holding that the military judge did not err in denying the challenge, would note that we have considered the totality of the circumstances in this case, including TSgt DM's responses to the military judge and trial defense counsel regarding perceptions and his ability to serve impartially. *See United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015) (holding the public perception test "may well reflect how members of the armed forces, and indeed the accused, perceive the procedural fairness of the trial as well").

(quoting *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987)). "The test for factual sufficiency is whether, after weighing the evidence . . . and making allowances for not having personally observed the witnesses, [we ourselves are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *Turner*, 25 M.J. at 325) (internal quotation marks omitted).

Appellant was convicted of Specifications 7, 8, 10, and 13 of Charge I. With regard to Specification 7 of Charge I (aggravated sexual contact with a child), the military judge properly instructed the court members on the elements as follows:

> One, that at or near Minot, North Dakota, on divers occasions between on or about 1 November 2009 and on or about 26 December 2011, the accused engaged in sexual contact, to wit: inserting his fingers into the anus of [JEV];
>
> Two, that at the time, [JEV] had not attained the age of 12 years.

With regard to Specification 8 of Charge I (aggravated sexual contact with a child), the military judge properly instructed the court members on the elements as follows:

> One, that at or near Minot, North Dakota, on divers occasions between on or about 1 November 2009 and on or about 26 December 2011, the accused engaged in sexual contact, to wit: inserting his fingers into the anus of [JAV]; and,
>
> Two, that at the time, [JAV] had not attained the age of 12 years.

The military judge defined "sexual contact" as the "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of another person, or intentionally causing another person to touch, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to abuse, humiliate, or degrade any person or to arouse or gratify the sexual desire of any person."

With regard to Specification 10 of Charge I (indecent liberties with a child), the military judge properly instructed the court members on the elements as follows:

> One, that at or near Minot, North Dakota, on divers occasions between on or about 1 November 2009 and on or

about 26 December 20011, the accused committed a certain act by ejaculating in front of [JEV] and then wiping his semen on [JEV's] penis;

Two, that the act was indecent;

Three, that the accused committed the act in the physical presence of [JEV];

Four, that the accused committed the act with the intent to gratify the sexual desire of the accused; and,

Five, that at the time, [JEV] was under 16 years of age.[4]

With regard to Specification 13 of Charge I (indecent liberties with a child), the military judge properly instructed the court members on the elements as follows:

One, that at or near Minot, North Dakota, on divers occasions between on or about 1 November 2009 and on or about 26 December 2011, the accused committed a certain act by causing [JEV] to watch the accused touch his own penis;

Two, that the act was indecent;

Three, that the accused committed the act in the physical presence of [JEV];

Four, that the accused committed the act with the intent to gratify the sexual desire of the accused; and,

Five, that at the time, [JEV] was under 16 years of age.

The military judge defined "indecent liberty" as

indecent conduct, but physical contact is not required. It includes one who, with the requisite intent, exposes one's genitalia, anus, buttocks, or female areola or nipple to a child. An indecent liberty may consist of communication of indecent language as long as the communication is made in

---

[4] The court members found Appellant "of Specification 10 of Charge I: Guilty, excepting the words '. . . and then wiping his semen on [JEV's] penis', substituting therefor the words: 'and then wiping his semen on [JEV's] body'. Of the excepted words: Not Guilty; of the substituted and remaining words: Guilty."

the physical presence of a child. If words designed to excite sexual desire are spoken to a child or a child is exposed to or involved in sexual conduct, it is an indecent liberty; the child's consent is not relevant.

JEV was six years old when he first reported Appellant's sexual abuse, and he was eight years old at the time of trial. Using visual aids, JEV described credibly how Appellant, on more than one occasion, touched his own penis and then ejaculated semen onto JEV's body. JEV testified that Appellant would be alone with him on the bed in his parents' bedroom, and on those occasions: (1) Appellant would squeeze "white stuff" from his penis, (2) the white stuff would come out of the same hole Appellant used when he would "pee," (3) Appellant would cause the stuff to go onto JEV's stomach, (4) the white stuff "felt wet" and smelled "weird," and (5) JEV did not like it.

JEV also described credibly how Appellant, on more than one occasion, inserted his fingers into JEV's buttocks. JEV testified that: (1) Appellant would insert two of his fingers into the crack of JEV's buttocks "where toilet paper goes," (2) Appellant would wiggle his fingers back and forth, and (3) this would hurt JEV—but he was too afraid of Appellant to say so.

JAV was just under four years old when Appellant's abuse of him came to light, and he was six years old at the time of trial. With the assistance of visual aids, JAV testified that Appellant "butt tickled" him—that is, put his hand into JAV's buttocks—more than once. JAV explained that he did not like it when Appellant did this to him, because "it kind of hurt and it kind of tickled and when [he] . . . said 'Stop,' he didn't stop." JAV added, "It just felt like a teeny weenie, weenie bite of a [c]aterpillar."

The relative youth of JEV and JAV causes us to consider their testimony with some caution. There is much in the record, however, to indicate that their accounts were truthful. These indicators include, but are not limited to, the following:

(1) Ms. AVC appears to have had no ulterior motive in reporting Appellant's misconduct to authorities. By all accounts, the marriage between Ms. AVC and Appellant was generally stable and happy until his abuse came to light. Upon hearing the victims' allegations, Ms. AVC hoped that they were not true, and was then devastated to realize that they were. Reporting the abuse and supporting her sons during the investigation and litigation of this case caused Ms. AVC significant hardship. Among other things, she was required to abandon a nursing program in which she was progressing well in order to live with parents and siblings in her home state.

(2) Based upon her nurse's training, Ms. AVC was careful to speak with her sons separately, to use non-leading questions, and to avoid suggesting ideas or details as to what might have occurred.

(3) Both JEV and JAV reported the abuse in close proximity to the time it actually occurred. In language appropriate to their age, JEV and JAV described unique events beyond the awareness of children who have not suffered sexual abuse. Each boy's account remained consistent over time and, with no evidence of collusion, corroborated that of his brother.

(4) Appellant had access to the victims and spent considerable time alone with them while Ms. AVC was studying for her nursing program, while she was on a week-long trip to Norway, and on other occasions.

Ultimately, considering the evidence in the light most favorable to the prosecution, we are satisfied that a reasonable factfinder could have found all the essential elements of each offense beyond a reasonable doubt. Moreover, making allowances for not having personally observed the witnesses, we ourselves are convinced of Appellant's guilt of all four specifications beyond a reasonable doubt.

### III. Multiplicity and Unreasonable Multiplication of Charges

Appellant contends that his two convictions for indecent liberties with a child (Specifications 10 and 13 of Charge I) are multiplicious and constitute an unreasonable multiplication of charges.

We review claims of multiplicity de novo. *United States v. Paxton*, 64 M.J. 484, 490–91 (C.A.A.F. 2007). Appellant did not move to dismiss either specification at trial. A claim of multiplicity not raised at trial is forfeited in the absence of plain error. *United States v. Lloyd*, 46 M.J. 19, 21-22 (C.A.A.F. 1997). We review claims of unreasonable multiplication of charges, even when not explicitly raised at trial, under the framework set out in *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001).

In the context of multiplicity and unreasonable multiplication of charges, three concepts may arise: multiplicity for purposes of double jeopardy, unreasonable multiplication of charges as applied to findings, and unreasonable multiplication of charges as applied to sentencing.

We first assess whether the failure to dismiss one of the specifications for multiplicity constituted plain error. Appellant has the burden of persuading us that there was error, that the error was plain or obvious, and that the error materially prejudiced a substantial right of the appellant. *United States v. Powell*, 49 M.J. 460, 464–65 (C.A.A.F. 1998). Appellant may show plain error by showing that the specifications are facially duplicative. *States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F. 2000). "Whether specifications are facially duplicative is determined by reviewing the language of the

specifications and 'facts apparent on the face of the record.'" *Id.* (quoting *United States v. Lloyd*, 46 M.J. 19, 24 (C.A.A.F. 1997)).

The two specifications together, in light of the facts apparent on the face of the record and the exceptions and substitutions of the panel, allege that on divers occasions Appellant caused JEV to watch him while he masturbated himself to orgasm, after which he wiped his semen on JEV. This course of conduct was charged in two parts: first that he caused JEV to watch him touch his penis, and second, that he ejaculated "in front of" JEV and wiped his semen on JEV. "Specifications are not facially duplicative if each requires proof of a fact not required to prove the others." *United States v. Parker*, 73 M.J. 914, 917 (A.F. Ct. Crim. App. 2014) (citing *United States v. Campbell*, 68 M.J. 217, 220 (C.A.A.F. 2009)). Specification 10, alleging Appellant wiped semen on JEV, would require proof of that fact when Specification 13 would not. However, it is much less clear whether the allegation that Appellant caused JEV to watch Appellant touch his penis requires proof of a fact, in the context of the face of the record, that masturbating "in front of" JEV does not. Rather than relying on such a narrow question of interpretation, we instead proceed to the unreasonable multiplication of charges analysis, since relief on that basis would negate any prejudice suffered by Appellant. *See United States v. Marko*, 60 M.J. 421, 422 (C.A.A.F. 2004) (Daily Journal).

Even if charged offenses are not multiplicious, courts may apply the doctrine of unreasonable multiplication of charges to dismiss certain charges and specifications. Rule for Courts-Martial 307(c)(4) summarizes this principle as follows: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The principle provides that the Government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994). Our superior court has endorsed the following non-exhaustive list of factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?
>
> (4) Does the number of charges and specifications [unreasonably] increase the appellant's punitive exposure?

(5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Quiroz*, 55 M.J. at 338–39 (quoting *United States v. Quiroz*, 53 M.J. 600, 607 (N.M. Ct. Crim. App. 1993)) (internal quotation marks omitted). "[U]nlike multiplicity—where an offense found multiplicious for findings is necessarily multiplicious for sentencing—the concept of unreasonable multiplication of charges may apply differently to findings than to sentencing." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). In a case where the *Quiroz* factors indicate the unreasonable multiplication of charges principles affect sentencing more than findings, "the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings." *Quiroz*, 55 M.J. at 339.

In the present case, Specifications 10 and 13 of Charge I involved both the same time frame and the same victim, JEV. Specification 10 alleged that on divers occasions Appellant engaged in indecent conduct "by ejaculating in front of [JEV] and then wiping his semen on [JEV's] penis." Specification 13 alleged on divers occasions Appellant took indecent liberties "by causing [JEV] to watch [Appellant] touch his own penis." The elements of Specifications 10 and 13 were otherwise identical. The court members found Appellant guilty of Specification 10, excepting the words "and then wiping his semen on [JEV's] penis," substituting therefor the words "and then wiping his semen on [JEV's] body." The members found Appellant guilty of Specification 13 as charged.

Although Appellant did not object at trial, failure to do so does not establish a per se rule that relief is unwarranted. "While not applying a blanket forfeiture rule, the failure to raise the issue at trial suggests that the appellant did not view the multiplication of charges as unreasonable." *United States v. Quiroz*, 53 M.J. 600, 607 (N.M. Ct. Crim. App. 2000). Accordingly, this factor weighs against Appellant.

The second factor weighs in favor of Appellant. In reviewing the record of trial, we can find no clear instance in which JEV saw Appellant touch his penis in a sexual manner, except for those occasions when Appellant also ejaculated and wiped the semen on JEV's body. Thus, we cannot find that Specification 10 and 13 address distinctly separate criminal acts.

Similarly, the specifications also tend to misrepresent Appellant's criminality by suggesting there were instances, apart from those in which he ejaculated, wherein Appellant caused JEV to watch him touch his own penis. This factor weighs in Appellant's favor.

Since the specifications refer to the same conduct and tend to misrepresent Appellant's criminality, we also find that they unreasonably increase Appellant's punitive exposure. We are cognizant of the overall scope of Appellant's misconduct, and do not consider the magnitude of additional exposure to be substantial. However, even a small

increase in exposure is unreasonable when the additional exposure is not rationally related to a commensurate distinction in culpable behavior.

Finally, we do not find any evidence of prosecutorial overreach or abuse in the drafting of the charges. In light of the age of the victim, a reasonable prosecutor would allow for the possibility that the child's testimony at trial may vary from his previous accounts and draft charges accordingly. We find this factor weighs against Appellant.

On balance, we find that Specification 13 unreasonably multiplied, both for findings and sentencing, Specification 10. Accordingly, we disapprove and dismiss Specification 13. Having disapproved Specification 13, we also explicitly find that Appellant suffered no prejudice by virtue of any failure to dismiss that specification on double jeopardy multiplicity grounds.

*Sentence Reassessment*

Having disapproved Specification 13 of Charge I, we must determine whether we can reassess the sentence. This court has "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986). This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

We find we can reassess the sentence in this case. The change in the penalty landscape is insubstantial in light of Appellant's conviction for several other serious offenses.[5] Specification 10, as discussed above, captures the gravamen of the misconduct and retains the admissibility and relevance of the surrounding circumstances. We also find that the remaining offenses are of the type with which we have experience and familiarity as appellate judges to determine the sentence that would have been imposed. We have considered the totality of the circumstances and reassess the sentence to the same sentence approved by the convening authority.

---

[5] Dismissing the conviction for Specification 13 of Charge I reduces the maximum length of confinement from 70 years to 55 years.

*Conclusion*

The finding of guilty as to Specification 13 of Charge I is set aside and dismissed. The remaining findings, and the sentence, as reassessed, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings, as modified, and sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

ACM 38689